Kemma F. JOHNSON, Plaintiff,

Cheri B. Dietrich, Appellant,

v.

CANADIAN PACIFIC LTD., d/b/a Soo Line Corp. and Soo Line Railroad Co., et al., Respondents.

No. C6–94–742.

Court of Appeals of Minnesota.

Oct. 4, 1994.

Review Granted Dec. 20, 1994.

D. Scott Klemp, Marna Wolf Orren, Orren, Klemp & Stanton, St. Paul, for appellant.

John C. Holden, Soo Line R. Co., Minneapolis, for respondents.

Considered and decided by AMUNDSON, P.J., and HARTEN and THOREEN, JJ.

## OPINION

JOHN F. THOREEN, Judge.*

Employee appeals summary judgment on her age discrimination claims, arguing that

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

there were genuine issues of material fact and that employer was not entitled to judgment as a matter of law. We reverse and remand.

## FACTS

Appellant Cheri Dietrich was employed by respondent Canadian Pacific Ltd., d/b/a Soo Line Corporation and Soo Line Railroad Co. (Soo Line), since 1986. Dietrich, who was born in March 1945, worked as a clerk-stenographer in the transportation department of the operating department. Respondent Vern Graham was the director of the operating department. Dietrich maintained the central filing system for the transportation and operating departments, prepared invoices, printed and distributed reports, sorted and delivered the mail, and performed various typing and copying tasks.

In 1990, Soo Line instituted an "office automation project" to establish an on-line file system and consolidate administrative functions. Respondent Robert Tisdall was appointed coordinator of office automation; he explained the reorganization project to the employees in March 1991.

The ensuing reorganization abolished existing positions and created new ones. Although Dietrich interviewed for many of the new positions, they were awarded to employees who were younger than her by as much as 10 years. In particular, a new position of records analyst was created August 1, 1991. Anita Migliaccio (d.o.b. 2/16/55) was selected and trained for the job, apparently outside the usual posting procedure. At the reorganization meetings between March and September, Dietrich voiced her concern that she was being treated unfairly.

On August 31, 1991, Tisdall announced that Dietrich's position (among others) was abolished effective September 5, 1991. Dietrich states that Tisdall glared at her for several minutes when he publicly announced the abolishment of her position.

Penny Miller, a stenographer in the transportation department, stated that Migliaccio assumed many of the filing duties for which Dietrich was previously responsible. She also stated that the mail and paper filing that Dietrich previously performed had "backed up" after the abolishment of Dietrich's position. Miller also stated that she and other employees assumed some of Dietrich's other duties.

Tisdall agreed that not all of the filing was transferred to the electronic system after Dietrich's termination. Graham likewise stated that certain jobs—the mail, copying, filing, answering the phones—were not affected by the automation plan. Finally, some of Dietrich's duties were reassigned to the managerial employees for whom she previously performed the tasks.

Due to her lack of seniority, Dietrich was not eligible to "bump" into another position. Thus, she was furloughed but maintained her seniority to bid on other jobs. Dietrich applied for several other positions, but (with one exception) younger employees were selected. After she failed to obtain one position, Dietrich complained to personnel director Joyce Norals.

On October 3, Dietrich wrote senior vice president James Lee, complaining about various unfair actions. On November 6, she wrote Lee again to complain about his handling of her October 3 letter. Dietrich then filed a human rights charge on November 12, 1991. Between September 1991 and the end of 1992, she unsuccessfully applied for two more positions with Soo Line. During 1992, she took computer classes in WordPerfect and Lotus.

Soo Line maintained that Dietrich was not as qualified as those who were awarded the positions. Soo Line officials stated that the positions all required extensive experience with personal computers and that Dietrich lacked sufficient knowledge of computers and the electronic communications system. They assert that Migliaccio received the records analyst position because she was computer literate and highly recommended by her supervisor.

In May 1992, Dietrich filed suit against Canadian Pacific, alleging age discrimination, reprisal discrimination, intentional infliction of emotional distress, and negligent infliction of emotional distress. In September 1993,

Dietrich obtained a position as a personal stenographer with Soo Line.

The district court granted Soo Line summary judgment on all four of Dietrich's claims. This appeal followed. Dietrich only appeals, however, the dismissal of her discrimination claims; she does not challenge the dismissal of her emotional distress claims.

## ISSUES

I. Did the district court err in granting summary judgment on Dietrich's claim of age discrimination?

II. Did the district court err in granting summary judgment on Dietrich's claim of retaliatory discharge?

## ANALYSIS

On review of a summary judgment, this court must determine if there are any genuine issues of material fact and whether the district court correctly applied the law. *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 112 (Minn.1992).

### I. Age Discrimination

Dietrich alleges age discrimination with respect to (1) discharge, (2) failure to train, and (3) failure to hire. Under the Minnesota Human Rights Act (the MHRA), an employer may not, on the basis of age, discharge an employee or "discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment." Minn.Stat. § 363.03, subd. 1(2)(b)–(c) (1992). The MHRA also prohibits any person from intentionally aiding, abetting, inciting, compelling or coercing a person to engage in a discriminatory practice. Minn.Stat. § 363.03, subd. 6(1)–(2).[1] For disparate treatment actions

under the MHRA, the Minnesota Supreme Court has adopted the three-part *McDonnell–Douglas/Burdine* analysis. *Hubbard v. UPI, Inc.,* 330 N.W.2d 428, 441–42 (Minn. 1983).

The plaintiff must first prove by a preponderance of the evidence a "prima facie case" of discrimination. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Then the burden shifts to the employer to articulate some legitimate nondiscriminatory reason for its action. *Id.* The plaintiff then must show by a preponderance of the evidence that those proffered reasons were pretextual. *Id.*[2]

### A. Summary Judgment and the Plaintiff's Prima Facie Case

*Burdine* established an order of proof at trial; *Burdine* did not directly address summary judgment. Soo Line maintains that Dietrich must actually establish a "prima facie case" and prove pretext to survive summary judgment. Dietrich argues, however, that the *Burdine* analysis must be fully satisfied only to ultimately prove her case at trial, and that she need only establish genuine issues of material fact in order to survive summary judgment. We agree.

Summary judgment is proper if and only if "there is no genuine issue as to any material fact and * * * either party is entitled to a judgment as a matter of law." Minn.R.Civ.P. 56.03. Under *Burdine*, establishing a "prima facie case" simply creates a legally mandatory but rebuttable presumption of discrimination. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The court explained that it did not use "prima facie case" in the normal sense of having met the initial burden of production. *Id.* at 254 n. 7, 101 S.Ct. at 1094 n. 7.

---

**1.** Dietrich alleged a separate claim against Graham and Tisdall for aiding and abetting Soo Line in discriminating against her. For purposes of this appeal we view this claim against Graham and Tisdall—two managerial employees of Soo Line—as coincident with her main claim against Soo Line.

**2.** We do not believe that the present issue of when summary judgment is proper is affected by the recent decision in *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d

407 (1993). In *Hicks*, the court addressed—on review of a verdict, not a summary judgment—the issue of whether a plaintiff's showing that an employer's proffered reasons were false entitles plaintiff to judgment as a matter of law. The court clarified that such a showing does not necessarily establish pretext; rather, plaintiff—who always bears the burden of persuasion—must still show a *discriminatory* basis for discharge. *Id.* at —— – ——, 113 S.Ct. at 2748–49.

Whereas a plaintiff's burden of production usually refers to whether the plaintiff has created an issue of fact for the jury, the "prima facie case" under *Burdine* sharpens the "inquiry into the elusive factual question of intentional discrimination." *Id.* at 255 n. 8, 101 S.Ct. at 1094 n. 8.

Accordingly, "there is no inherent relation between the failure to establish a prima facie case and summary judgment." *Thornbrough v. Columbus & Greenville R.R.,* 760 F.2d 633, 641 n. 9 (5th Cir.1985). Even if the plaintiff has not actually established a prima facie case, "if he has raised a genuine issue of material fact, he should survive summary judgment." *Id.* at 641 n. 8. Not establishing a "prima facie case" only means that

> the factfinder is not *required* to find in the plaintiff's favor; it does not mean that the factfinder is not *permitted* to find in the plaintiff's favor.

*Id.* at 641 n. 9 [3] (emphasis in original).

For the same reasons, establishing a prima facie case does not necessarily preclude summary judgment for the employer. *Pace v. Southern Ry. Sys.,* 701 F.2d 1383, 1391 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983). Rather, the issue is whether the employee has created a genuine issue of material fact that the employer discriminated on the basis of age. Nonetheless, we address the issue in terms of the *Burdine* framework because it structures the order of proof at trial.

### 1. Elements of Prima Facie Case

▮ "The burden of establishing a prima facie case * * * is not onerous." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094. An employee must show that (1) she is a mem-

ber of the protected class, (2) she was qualified for the position, (3) she was subjected to an adverse employment action, and (4) the employer assigned a non-member of the protected class to do the same work. *Hubbard,* 330 N.W.2d at 442.

### (a) Membership in a Protected Class

Under the MHRA "all employees over the age of majority are protected from age discrimination in employment." *Bruss v. Toro Co.,* 427 N.W.2d 17, 19 (Minn.App.1988). Dietrich was 46 and thus entitled to protection.

### (b) Qualifications

A plaintiff need only prove that she "met the minimum objective qualifications for the job." *State by Khalifa v. Hennepin County,* 420 N.W.2d 634, 640 (Minn.App.1988), *pet. for rev. denied* (Minn. May 4, 1988). And here the district court expressly found that there was no dispute that Dietrich was qualified for the position she held.

### (c) Adverse Employment Action

The district court stated that Dietrich must have been "discharged." But the statute also protects against discrimination with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment. Minn.Stat. § 363.-03, subd. 1(2)(b)–(c). Thus, a plaintiff need only show some form of adverse employment action. Here, Dietrich's position was abolished and she was placed on furlough for two years until she obtained a new position. We think this at least raises a factual question of whether she suffered an adverse employment action. Soo Line argues that there was no

---

**3.** In *Bruss v. Toro Co.,* 427 N.W.2d 17 (Minn. App.1988), this court reversed a summary judgment for the employer where "sufficient factual issues exist[ed] * * * on each of the four prima facie requirements." Id. at 19. In *Rademacher v. FMC Corp.,* 431 N.W.2d 879 (Minn.App.1988), however, this court stated—without reference to *Bruss*—that summary judgment for the employer is appropriate if the employee "fails to establish a prima face case." Id. at 882 (citing *Matson v. Cargill, Inc.,* 618 F.Supp. 278, 281 (D.C.Minn. 1985)). But we clarify here that summary judgment does not turn on whether the employee has established a prima facie case under *Burdine,* but

rather whether the employee has produced any evidence creating a genuine issue as to whether the employer was motivated by a discriminatory animus.

We also note that *Rademacher*'s reliance on *Matson* is put in question by *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239 (8th Cir.1991). In *Johnson,* the district court granted the employer summary judgment after concluding that the plaintiff failed to establish a prima facie case. The Eighth Circuit reversed, stating that the employee had produced sufficient evidence to raise a genuine issue of material fact. *Id.* at 1244.

adverse action against Dietrich because her position was eliminated. But "it is the work performed, not the job title, that is crucial to the analysis." *Bruss,* 427 N.W.2d at 20. Here, Dietrich produced evidence that her duties were not abolished, but distributed among other employees.

### (d) Replacement

Because the MHRA protects everyone over the age of 18 from age discrimination, Dietrich need only raise sufficient evidence to create a factual issue of whether she was replaced by a younger worker.[4]

The district court ruled, however, that Dietrich could not establish a prima facie case simply by showing that younger workers were hired in her place. The court relied largely on *Feges v. Perkins Restaurants, Inc.,* 465 N.W.2d 75 (Minn.App.1991), *rev'd in part on other grounds,* 483 N.W.2d 701 (Minn.1992). *Feges* only holds, however, that being replaced by a younger worker does not necessarily prove age discrimination. *Id.* at 80. *Feges* did not concern summary judgment, but rather a judgment after a trial. *Id.* at 76. And in *Feges,* the employee had established a prima facie case. *Id.* at 79. The issue was whether the employee had carried her ultimate burden of persuasion that the employer acted discriminatorily. This court simply ruled that replacement by a younger worker was not enough to reverse a trial judgment for the employer. *Id.* at 80.

Finally, Soo Line argues that Dietrich must make an additional showing to establish a prima facie case because her discharge stems from a "reduction in force." There is federal precedent stating that an employee must make "some additional showing" to establish a prima facie case if the employer claims that a discharge is due to a general reduction in force. *Holley v. Sanyo Mfg., Inc.,* 771 F.2d 1161, 1165 (8th Cir.1985).

We believe there is a genuine issue of material fact as to whether Soo Line's reorganization constitutes a true reduction in force. Furthermore, we believe the imposition of this extra requirement upon a plaintiff

misapprehends the nature of a prima facie case under *Burdine.* If economic conditions have required a "reduction in force," this should simply serve as the employer's articulation of a valid reason for the discharge, thereby rebutting the presumption created by a prima facie case. An employer's explanation of its action is addressed at the second step of the analysis, not in terms of the employee's prima facie case.

### 2. Summary Judgment and the Ultimate Burden of Persuasion

The district court stated here that Dietrich must show "that age was a factor in the decision not to hire for certain positions" in order to establish a prima facie case. But whether age was a factor is an employee's ultimate burden of persuasion. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

The plaintiff's ultimate burden is to prove she was discharged due to her age. *Rose v. National Cash Register Corp.,* 703 F.2d 225, 227 (6th Cir.), *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983). The evidence that is sufficient to get a plaintiff's case to the jury is different from that which compels a verdict. *Id.* To survive summary judgment, the employee need only produce evidence which—when viewed in the light most favorable to the plaintiff—would permit a reasonable trier of fact to find in plaintiff's favor. *Parker v. Federal Nat'l Mortgage Ass'n,* 741 F.2d 975, 980 (7th Cir.1984). A plaintiff cannot be held to "prove" discrimination—an issue that often requires weighing the indirect evidence of intent—prior to trial.

### B. Employer's Valid Reasons

Once the employee establishes a prima facie case, the employer's burden of production is also very minimal. To rebut the presumption arising from the prima facie case, the employer would need only to present sufficient evidence to raise an issue of fact "as to whether it discriminated against the plaintiff." *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094. The employer need not

---

4. Federal law, in contrast, limits the protected class to those who are at least 40 years of age.

29 U.S.C. § 631(a) (1988).

actually persuade the trier of fact that it did not act discriminatorily. *Id.* at 257, 101 S.Ct. at 1096. Rather, the employer must only articulate legitimate reasons for its actions.

Here, Soo Line stated that its decision to abolish Dietrich's position stemmed from an office automation project designed to improve efficiency and that its hiring of other employees was based on their superior qualifications. For purposes of this summary judgment appeal, we assume without deciding that this would rebut the presumption.

## C. Pretext

Once the employer rebuts the presumption, then the plaintiff bears the burden of persuading the court that the proffered reason was mere pretext, a burden that "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* at 256, 101 S.Ct. at 1095.

But on a motion for summary judgment,

the question is not whether the plaintiff proves pretext, but whether the plaintiff raises a genuine issue of fact regarding pretext.

*Thornbrough*, 760 F.2d at 646. Where there is conflicting evidence of pretext on summary judgment, the district court must look at the evidence in the light most favorable to plaintiff, and not weigh the evidence or determine the truth of the matter. *Olivera v. Nestle P.R., Inc.*, 922 F.2d 43, 49 (1st Cir.1990).

Because an employer rarely states that it is firing someone because of his or her age, most evidence of age discrimination is necessarily indirect. *Thornbrough*, 760 F.2d at 638. Thus, summary judgment is generally inappropriate in claims of employment discrimination because they "involve nebulous questions of motivation and intent." *Id.* at 640; *accord Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991) (summary judgment improper unless all the evidence points one way and is not susceptible of any reasonable inference in favor of the nonmoving party).

Furthermore, "it is difficult to determine what evidence might legitimately sway the factfinder and hence be material." *Thornb-*

*rough*, 760 F.2d at 641. Discrimination cases usually implicate intricate factual issues turning on witness credibility. *Sigurdson v. Isanti County*, 386 N.W.2d 715, 721 (Minn. 1986).

Summary judgment is perhaps more improper where, as here, the employer engaged in a factually complex reorganization that could easily be used as a pretext for age discrimination. Furthermore, Soo Line's defense that Dietrich was not qualified for the positions for which she applied is itself subject to the question of whether her lack of qualifications stemmed from Soo Line's failure to train Dietrich as it had younger employees. Soo Line apparently chose Migliaccio and "groomed" her for the job of records analyst without giving Dietrich a chance to apply for the new position. We recognize that the courts should not second guess an employer's decisions. But we believe there is a factual issue as to whether Soo Line passed over Dietrich due to her age.

## II. Retaliatory Discharge

Employers may not intentionally engage in any "reprisal" against an employee because that person

opposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

Minn.Stat. § 363.03, subd. 7(1) (1992). Reprisals include

any form of intimidation, retaliation, or harassment. It is a reprisal for an employer to * * * refuse to hire * * *, depart from any customary employment practice; transfer or assign the individual to a lesser position in terms of wages, hours, job classification, job security, or other employment status.

Minn.Stat. § 363.03, subd. 7.

The *McDonnell–Douglas* framework also applies to retaliation claims. *Hubbard*, 330 N.W.2d at 444. To establish a prima facie case, an employee must show (1) statutorily-protected conduct, (2) adverse employment action by the employer, and (3) a causal connection between the conduct and adverse action. *Id.*

The district court stated that Dietrich must prove a causal connection between the protected activity and the adverse employment action. The court relied on *Burrus v. United Telephone Co.*, 683 F.2d 339, 343 (10th Cir.1982). But in *Burrus* the court was reviewing a trial judgment.

To survive summary judgment, a plaintiff must only produce evidence sufficient to create a genuine issue of whether her protected activity caused the retaliation. Furthermore, a causal connection may be demonstrated "indirectly by evidence of circumstances that justify an inference of retaliatory motive." *Hubbard*, 330 N.W.2d at 445 (citing *Burrus*, 683 F.2d at 343). Such evidence would include "protected conduct closely followed by adverse action." *Burrus*, 683 F.2d at 343. Thus, such a showing should suffice to create a factual issue regarding causation.

For purposes of this appeal, we believe that (1) Dietrich's complaints between March and September 1991 about the unfairness of the reorganization, (2) her September–November 1991 letters about being passed over for the new positions, (3) the November 1991 filing with the state human rights department, and (4) the 1992 filing of her complaint in district court would constitute protected activities. Likewise, several Soo Line actions could qualify as retaliation: (1) the August 31, 1991, abolishment of Dietrich's position, (2) the alleged lack of retraining, and (3) the failure to rehire until 1993.

Here the district court did not address all of the potential causal relationships. The court ruled that the elimination of Dietrich's position could not have been in retaliation for her complaints during the automation project because she never expressly articulated her concerns in terms of "age discrimination" but rather only "unfair treatment." Although it is not clear that Dietrich was complaining expressly about age discrimination, we believe that it is too exacting to require her to have articulated her concerns in such precise terms. Dietrich maintained in her answer and deposition that she had complained about discrimination and the fact that her duties were being assigned to younger employees with less experience. We note that discrimination is ultimately an issue of intent—an issue that often requires an evaluation of witness credibility rather than documentary or physical evidence.

### DECISION

Dietrich produced sufficient evidence to raise genuine questions of material fact and thus the court erred in granting Soo Line summary judgment on her age discrimination and retaliation claims.

**Reversed and remanded.**