Cheri B. **DIETRICH**, Respondent,

Kemma F. Johnson, Plaintiff,

v.

**CANADIAN PACIFIC LTD.** d/b/a Soo Line Corp. & Soo Line Railroad Co., Minnesota Corporations, and Vern Graham & Robert Tisdall, Individually, Appellants.

No. C6–94–742.

Supreme Court of Minnesota.

Aug. 25, 1995.

John C. Holden and Louise A. Dovre, Minneapolis (Janis M. Clay, of counsel), for Canadian Pacific, Ltd.

D. Scott Klemp, Marna Wolk Orren, Orren, Klemp & Stanton, St. Paul, for Cheri Dietrich.

## OPINION

STRINGER, Justice.

Plaintiff-respondent Cheri Dietrich ("plaintiff"), an employee of Canadian–Pacific Ltd., d/b/a Soo Line Railroad Company ("Soo Line"), brought suit under the Minnesota Human Rights Act ("MHRA"), Minn.Stat. §§ 363.03, 181.81 (1990), against Soo Line, plaintiff's former manager, Vern Graham, and the vice-president of plaintiff's former department, Robert Tisdall, alleging age discrimination and reprisal regarding the abolition of her job position and related training and hiring opportunities. The trial court granted Soo Line's motion for summary judgment, dismissing both claims. The court of appeals reversed, determining that several issues of material fact remained in dispute. *Johnson v. Canadian Pacific Ltd.*, 522 N.W.2d 386, 389–92 (Minn.App.1994). We determine that plaintiff's conclusory allegations failed to assert the specific factual predicate to a prima facie case of employment discrimination or reprisal. Thus, summary judgment was appropriate on these issues. Accordingly, we reverse and reinstate the judgment in favor of Soo Line.

Plaintiff commenced employment with Soo Line in October 1986. From March 1988 until her job was abolished on September 5, 1991, plaintiff was employed as a clerk-stenographer in the transportation department

at Soo Line. Her duties included maintaining the central filing system for the transportation and operations departments, filing documents and records, preparing invoices, sorting and delivering mail, and printing and distributing morning reports. Plaintiff was 46–years–old when the events relevant to this action transpired.

In March 1991, Soo Line initiated discussions with employees from the transportation and engineering departments regarding the "office automation project." The goal of the office automation project was to streamline clerical staff operations by forming a unit office comprised of employees from both the transportation and engineering departments. The project included acquisition of computer equipment, establishment of an on-line computer filing system, training of personnel, and consolidation of redundant administrative activities in the newly formed department.

Plaintiff claims that early in March 1991, Soo Line's Senior Manager of Operations Administration, Vern Graham, told the employees, including plaintiff, that no jobs would be eliminated as a result of the office automation project, and that Assistant Vice President of Operation Services, Robert Tisdall, stated the same, requesting that employees not contact their union.

Before formal implementation of the office automation project, 36–year–old Anita Migliaccio, a personal stenographer with Soo Line, was selected to participate in a project as a "records trainer." This position apparently involved significant computer training and use of the new electronic filing system. Soo Line asserts Migliaccio was selected because of her computer experience and excellent recommendations from her supervisor. Approximately six months later, on August 1, 1991, Migliaccio was selected for the newly created position of Records Analyst. This position entailed running the new electronic filing system, as well as continuing the previous practice of manual filing, and absorbed all of plaintiff's manual filing work. Plaintiff maintains that she was the logical candidate to assume the duties of the Records Analyst

and that Soo Line, in "grooming" Migliaccio for the position, unlawfully discriminated against plaintiff because of her age.

Plaintiff further asserts that throughout the implementation of the office automation project she was denied opportunities to obtain necessary training and experience with the company's new computer system. The personal computer at her workstation was not linked with the network, so she could operate neither the new office automation software nor Merlin, Soo Line's new electronic communication system. At a management meeting on August 6, 1991, plaintiff verbally opposed Soo Line's handling of the reorganization and stated she felt she was being "discriminated against." On August 8, 1991, Tisdall allegedly told plaintiff's supervisor he was upset with plaintiff because of her statements at the meeting. Plaintiff had also contacted her union representative regarding the office automation project three or four times between March and July 1991.

At an office automation meeting on August 29, 1991, Tisdall announced publicly that plaintiff's position as clerk stenographer, and 68–year–old Kemma Johnson's position as requisition and material clerk in the engineering department, would be abolished effective September 5, 1991. Plaintiff and Johnson were the oldest employees in their respective departments.[1]

Upon abolition of her position, plaintiff had insufficient seniority to displace a junior worker, thus, she "voluntarily" furloughed herself. Furlough status enabled plaintiff to maintain her seniority and apply for jobs offered by Soo Line. She became eligible for, and received, unemployment benefits during this period of time.

On three occasions during the fall of 1991, plaintiff applied for the position of personal stenographer. According to Soo Line, plaintiff was not hired as a personal stenographer because she "lacked the level of knowledge required for the use of personal computers and the company's electronic communications system." In October 1991 she applied for a position as an administrative secretary but

---

1. Ms. Johnson, co-plaintiff in this action, exercised her seniority to obtain another position within the company. She is not a party to this appeal.

was not hired because she allegedly lacked necessary "technical knowledge."

Plaintiff wrote a series of letters to management challenging the unfair treatment she perceived. A letter to Soo Line's Director of Personnel, Joyce Norals, on September 18, 1991, objected to the company's handling of the interview and hiring process for the personal stenographer position, and a letter to the Senior Vice President and Chief of Soo Line, James Lee, on October 3, 1991, protested the abolishment of her job.

Soo Line maintains that plaintiff's position was eliminated as part of a company-wide reduction-in-force, asserting that the railroad industry has been downsizing for the last decade, and that it abolished 32 union-clerical positions during the four-month period from June through September 1991. In this particular automation project, Soo Line maintains that four of seven positions were abolished and two positions were created in the new unit office.

Plaintiff disputes whether a true reduction-in-force occurred. After her job was abolished she alleges that at least some of her job duties were retained and redistributed among younger employees: in addition to Anita Migliaccio, Peggy Reiman, age 44, Penny Miller, age 43, Pam Bolden, age 38, and Renee Russell, age 33, absorbed aspects of plaintiff's work. She alleges further that Soo Line hired temporary workers to assist with the workload in the transportation department, and that although Soo Line purported to eliminate clerical or union positions, it actually added management positions.

On November 12, 1991, plaintiff filed a complaint with the Minnesota Department of Human Rights. This action ensued.[2]

Under the MHRA, an employer may not, on the basis of age, discharge an employee or "discriminate against a person with respect to hiring, tenure, compensation, terms, up-

grading, conditions, facilities, or privileges of employment." Minn.Stat. § 363.03, subd. 1(2)(b)–(c) (1990). This court has adopted the three-part test established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) to analyze claims arising under the MHRA. *Danz v. Jones,* 263 N.W.2d 395 (Minn.1978); *see also Sigurdson v. Isanti County,* 386 N.W.2d 715, 719–20 (Minn.1986).[3]

The United States Supreme Court summarized the three-step framework of the *McDonnell Douglas* test in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981):

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Id.* (citations omitted).

The first step—establishing a prima facie case—is not onerous. *Id.* at 253, 101 S.Ct. at 1093–94. A prima facie case of employment discrimination may be established by direct evidence of discrimination, or, when direct evidence is lacking, by showing: (1) that plaintiff is a member of a protected group; (2) that plaintiff sought and was qualified for opportunities that the employer made available to others; (3) that plaintiff, despite her qualifications, was denied those opportunities; and (4) the opportunities remained

---

**2.** During the course of her unemployment, plaintiff took several computer classes. She eventually obtained a position with Soo Line as a personal stenographer in September 1993.

**3.** The *McDonnell Douglas* test was developed for discrimination cases arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1988) (as amended). However, because much

of the language of the Age Discrimination in Employment Act ("ADEA"), parallels that of Title VII, the federal courts have applied *McDonnell Douglas* to cases arising under the ADEA. *See, e.g., Halsell v. Kimberly–Clark Corp.,* 683 F.2d 285, 289 (8th Cir.1982), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983).

available or were given to other persons with plaintiff's qualifications. *Sigurdson,* 386 N.W.2d at 720; *see also Feges v. Perkins Restaurants, Inc.,* 483 N.W.2d 701, 711 (Minn.1992).

The Court has explicitly noted that the requirements of the prima facie test may vary depending on the circumstances involved. *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13; *see also Sigurdson,* 386 N.W.2d at 720. For example, here the claim is discrimination associated with a reduction-in-force program. It may therefore be impossible for the aggrieved employee to meet the fourth requirement of the *McDonnell Douglas* prima facie test—that her job was given to someone else with equal qualifications—because presumably her job would not have been filled. To address this analytical breakdown, the Eighth Circuit Court of Appeals, in *Holley v. Sanyo Mfg.,* 771 F.2d 1161, 1165–66 (8th Cir.1985), developed a modified version of the test which we believe fairly accommodates situations involving employee reductions-in-force.[4]

In the *Holley* analysis, when a plaintiff's discharge takes place within the context of a reduction-in-force, "some additional showing should be necessary to make a prima facie case" because the employer's reason for discharging the employee is not otherwise unexplained. *Id.* at 1165.

> The ADEA does not require that every plaintiff in a protected age group be allowed a trial simply because he was discharged during a reduction-in-force. We agree with the Sixth Circuit that "[t]he mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination" and that the "plaintiff in such reorganization cases must come forward with additional * * * evidence that age was a

factor in his termination in order to establish a prima facie case." * * * *

> This further showing could take many forms. * * * Such showing could be made, [for example,] by statistical evidence * * * or circumstantial evidence * * *. Further, the factually-oriented, case-by-case nature of [age discrimination] claims requires that we not be overly rigid in our consideration of the evidence of discrimination a plaintiff may offer.

*Id.* at 1165–66 (footnote omitted) (citing *LaGrant v. Gulf & Western Mfg. Co.,* 748 F.2d 1087, 1090–91 (6th Cir.1984)).

The "additional showing" requirement established in *Holley* is limited to cases involving a bona fide reduction-in-force, however. *See, e.g., Rinehart v. City of Independence,* 35 F.3d 1263, 1266–67 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1822, 131 L.Ed.2d 744 (1995). Thus, the first question before the court is whether a reduction-in-force in fact occurred.

While it is not always a simple task to determine whether a genuine reduction-in-force has occurred, the Sixth Circuit Court of Appeals has articulated a standard that we find helpful:

> [a] work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another person is hired or reassigned to perform the plaintiff's duties.

*Barnes v. GenCorp, Inc.,* 896 F.2d 1457, 1465 (6th Cir.), *cert. denied,* 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990).[5]

---

**4.** The federal courts in Minnesota have applied *Holley* to cases arising under the MHRA, although this court has not officially adopted the *Holley* test. *See Kypke v. Burlington Northern R.R.,* 928 F.2d 285, 286–87 (8th Cir.1991) (applying *Holley* test to claim arising under MHRA); *Hermeling v. Montgomery Ward & Co., Inc.,* 851

F.Supp. 1369, 1377 n. 7 (D.Minn.1994) ("The Court recognizes that Minnesota courts have yet to apply *Holley* in a reported decision to a reduction-in-force case brought under the Minnesota Human Rights Act.").

**5.** When circumstances do not involve a reduction-in-force, a plaintiff may make a prima facie

■ Here, plaintiff disputes whether a reduction-in-force actually occurred. A careful review of the record supports the trial court's finding that the job responsibilities attendant upon the abolished positions "were either eliminated or consolidated into the workload of the newly created unit office." The trial court's finding that "[s]ome duties were abolished in order to eliminate, consolidate and streamline unnecessary and redundant tasks" and "[a]fter the abolishment of [plaintiff's] position, the position duties were distributed to five different people * * *" clearly indicates that the Sixth Circuit's test has been met.[6] Although an explicit factual finding on the existence of a reduction-in-force would have been preferable, we conclude that the trial court's findings adequately establish that Soo Line engaged in a true reduction-in-force program. We hold that the test established in *Holley,* 771 F.2d at 1165–66, applies here, and plaintiff must make "some additional showing" in order to establish a prima facie case of age discrimination.

■ There is no real dispute that plaintiff met the first two requirements of the prima facie test, namely: (1) that she is a member of a protected age class; and (2) that she was qualified for the position later abolished. As to the third requirement— that plaintiff was discharged despite her qualifications—the trial court, citing *Anderson v. Twin City Rapid Transit Co.,* 250 Minn. 167, 84 N.W.2d 593, 597 (1957), found that plaintiff was not "discharged" because she was placed on furlough status. The court of appeals reversed, holding that furlough status at least raises an issue of fact as to whether plaintiff suffered an "adverse employment action." *Johnson,* 522 N.W.2d at 389. We agree with the court of appeals on this issue.

Plaintiff's eligibility for and receipt of unemployment benefits following the abolition of her position is significant. It would defy logic to hold that a plaintiff who is unemployed because she is furloughed following a reduction-in-force has not suffered an adverse employment action for purposes of a proceeding under the MHRA. *See* Minn. Stat. § 363.03, subd. 1(2)(c).

■ At the heart of plaintiff's claim is her assertion that her job was selected for elimination because of her age. Because we have concluded that there was sufficient evidence to determine that Soo Line's departmental reorganization was a bona fide reduction-in-force, plaintiff must make an "additional showing" under *Holley* to meet the fourth requirement of her prima facie test. The "additional showing" may take many forms and is not intended to be overly rigid. *Holley,* 771 F.2d at 1166.

■ As evidence that age animus motivated defendants' decision, plaintiff argues that she was the oldest person in her department, and that her job duties were redistributed to younger, less qualified employees. However, plaintiff offers no evidence that the employees who absorbed her duties were in fact less qualified. The record indicates that at least three of the younger employees who absorbed plaintiff's duties were chronologically within a few years of then 46–year–old plaintiff—hardly sufficient in itself to establish that the elimination of her job was age motivated.[7] As the trial court noted, citing *Barnes,* 896 F.2d at 1465, and *Kypke,* 928 F.2d at 286–87, "the fact that a younger worker is retained after a reduction or reorganization in force is insufficient in itself to establish a prima facie case of age discrimination." The record supports the trial

case of age discrimination by establishing the traditional elements of the *McDonnell Douglas* prima facie case. *See Hillebrand v. M–Tron Indus.,* 827 F.2d 363, 367–68 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989); *see also Bashara v. Black Hills Corp.,* 26 F.3d 820, 823 (8th Cir.1994).

**6.** The trial court also cites *Barnes,* 896 F.2d at 1465, and another reduction-in-force case, *Kypke,* 928 F.2d at 286–87. Similarly, citing *Holley,* 771 F.2d at 1167, the court stated that it "must

examine additional evidence presented by the Plaintiffs relative to the reduction or reorganization in force * * * and determine whether the reduction discriminated against older workers."

**7.** Of the employees who absorbed aspects of plaintiff's work, Peggy Reiman was 44 years of age, Penny Miller was 43, Pam Bolden was 38, Anita Migliaccio was 36, and Renee Russell was 33.

court's conclusion that "[p]laintiffs offered no evidence that their positions were eliminated because of their age rather than as a result of the office automation which included reorganization of duties within the departments." [8] Because we conclude that plaintiff failed to establish a prima facie case of age discrimination, summary judgment is appropriate.[9]

■ Next, we address plaintiff's claims that she suffered discrimination with respect to training and hiring opportunities. The trial court concluded that summary judgment was appropriate because plaintiff again failed to establish a prima facie case of age discrimination. The court of appeals reversed, but did not fully address these issues beyond noting that the defense that plaintiff was not qualified for the positions for which she applied could be rebutted by evidence that Soo Line failed to train plaintiff as it trained younger employees. *Johnson,* 522 N.W.2d at 391.

Plaintiff contends she was denied the opportunity to obtain necessary training or experience with the company's new computer system because the personal computer at her workstation was not linked with the network. Plaintiff did request additional training, and availed herself of a half-day computer class offered by Soo Line in Merlin. However, the record supports the trial court's conclusion that plaintiff "failed to show [she] had reason to use the new electronic filing system in the course of [her] duties in [her] old position[ ]." Thus, there is no evidence of a discriminatory motive behind defendants' failure to train plaintiff. The record also supports the trial court's finding that plaintiff lacked the technical expertise with computers necessary for the positions she sought. We conclude that

the trial court properly granted summary judgment on these claims.

■ The final issue before the court is whether the trial court erred in granting defendants' motion for summary judgment on plaintiff's reprisal claims. Plaintiff alleges her job elimination, and defendants' subsequent refusal to hire her, were retaliatory in nature and therefore unlawful under Minn. Stat. § 363.03, subd. 7.

The trial court concluded that although plaintiff complained of unfair treatment, she did not make a specific accusation of age discrimination before filing her MHRA claim on November 12, 1991. Thus, the trial court concluded, the filing of the MHRA claim was plaintiff's first protected act as to which a reprisal claim could be applicable. In addition, the court concluded that plaintiff "offered no evidence that [defendants'] failure to hire [plaintiff] was linked to engagement in protected conduct." The court of appeals reversed, holding that plaintiff's letters to management and verbal protests at meetings constituted protected activity. *Johnson,* 522 N.W.2d at 392. We disagree.

■ An employer may not intentionally engage in reprisal against an employee because the employee "[o]pposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." Minn.Stat. § 363.03, subd. 7(1) (1990). Reprisal includes:

> any form of intimidation, retaliation, or harassment. It is a reprisal for an employer to * * * refuse to hire * * * [to] depart from any customary employment practice; transfer or assign the individual to a lesser position in terms of wages,

---

**8.** Moreover, as the trial court concluded, even if plaintiff had established a prima facie case her claim would not withstand summary judgment. Regarding the third step of the *McDonnell Douglas* analysis, plaintiff claimed that the reduction-in-force was pretext. However, we agree with the trial court's conclusion that plaintiff produced insufficient evidence to create a genuine issue of fact on this question. Sufficient evidence supports the trial court's finding that a bona fide reduction-in-force occurred. Despite plaintiff's protestations to the contrary, the fact that some of her job duties remained viable and

were redistributed among other employees does not undermine the existence of a reduction-in-force, nor does it indicate that the decision to abolish her position was motivated by age animus. *See Barnes,* 896 F.2d at 1465.

**9.** We take this opportunity to express our disapproval of the court of appeals' sweeping statement that summary judgment is generally inappropriate in discrimination cases. *Johnson,* 522 N.W.2d at 391. This is not the law in Minnesota.

hours, job classification, job security, or other employment status.

Minn.Stat. § 363.03, subd. 7. In order to establish a prima facie case of reprisal an employee must establish: (1) that she engaged in statutorily protected conduct; (2) an adverse employment action by the employer; and (3) a causal connection between the two. *Hubbard v. U.P.I., Inc.*, 330 N.W.2d 428, 444 (Minn.1983) (applying *McDonnell Douglas* analysis to reprisal claims). The causal connection requirement may be satisfied "by evidence of circumstances that justify an inference of retaliatory motive, such as a showing that the employer has actual or imputed knowledge of the protected activity and the adverse employment action follows closely in time." *Id.* at 445.

The department reorganization resulting in the abolition of plaintiff's job was well substantiated as to plan and purpose, and resulted in a bona fide reduction-in-force. Plaintiff's job duties were either eliminated, usurped by the new electronic filing system, or were dispersed among other employees. Although plaintiff may have publicly alleged discrimination and unfair treatment, we concluded above that there was sufficient evidence for the trial court to find that there was none. Plaintiff's statutorily protected activity occurred on November 12, 1991, when plaintiff filed her discrimination claim with the MHRA—several months after she furloughed. We agree with the trial court that plaintiff failed to establish a prima facie case of reprisal, and summary judgment was appropriate on this issue. *See Glass v. IDS Fin. Servs.*, 778 F.Supp. 1029, 1060–61 (D.Minn.1991).

Reversed.