United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 96-2392
_____

Rhonda S. Kunferman,                    *
                                        *
            Appellant,                  *    Appeal from the United States
                                        *    District Court for the
      v.                                *    District of Minnesota.
                                        *
Ford Motor Company,                     *
                                        *
            Appellee.                   *
                                   _____

              Submitted: February 12, 1997

                 Filed: May 1, 1997
                                   _____

Before BEAM, HEANEY and LOKEN, Circuit Judges.
                                   _____


BEAM, Circuit Judge.


     Rhonda Kunferman sued Ford Motor Company for retaliatory discharge,
alleging violations of Minnesota law.  The district court[1] granted Ford's
motion for summary judgment.  We affirm.


**I.    BACKGROUND**


     In  early  1991,  Kunferman,  a  Ford  employee,  began  experiencing
numbness and tingling in her arms and hands.   Ford's plant

_____

     [1]The Honorable John R. Tunheim, United States District Judge
for the District of Minnesota.

physician could find no objective signs of a repetitive stress injury, but he restricted Kunferman's work assignments pending further diagnosis. Kunferman consulted a general practitioner who ordered electromyography (EMG) testing,[2] which revealed no abnormalities. Kunferman next saw a specialist, who similarly found "no objective evidence" of carpal tunnel syndrome or repetitive stress injury. Kunferman then consulted Dr. John Floberg, who conducted additional tests. The additional EMGs were also normal. Floberg, nevertheless, concluded that Kunferman was suffering from some repetitive stress injury, and restricted her to light work.

To comply with her restrictions, Kunferman was placed in the radiator fill position at the Ford plant. However, she complained that the fumes from an adjacent work area presented a health hazard. In response, Ford began a series of air quality tests at that work area. Meanwhile, Kunferman was shifted to several other positions within Ford's plant. Each exacerbated her symptoms.

In October, Ford retained a new plant physician, Dr. Leon Nesvacil. He examined Kunferman and her records several times and concluded that the medical evidence did not support the work restrictions prescribed by Dr. Floberg. Because a union agreement provided for resolution of differences between an employee's personal physician and the plant physician by an independent doctor, Kunferman was referred to an outside specialist. In the meantime, Kunferman returned to the radiator fill position.

---

[2]EMG testing is a process by which impairment to nerves in the arms and hands may be verified objectively. It involves measuring and analyzing the responses of muscles to stimulation by electricity. Dorland's Illustrated Medical Dictionary 537 (28th ed. 1994).

On September 23, 1991, Kunferman's husband, also a Ford employee, filed a complaint about the fumes at the radiator fill position with the Occupational Safety and Health Division of the Minnesota Department of Labor and Industry (MOSHA). MOSHA conducted an occupational safety and health inspection of the plant from October 3, 1991 through January 17, 1992.

On October 24, 1991, the independent specialist examined Kunferman and reviewed her medical records. His written report concluded that there was no objective clinical evidence to support Kunferman's complaints. Dr. Nesvacil then decided to remove Kunferman's work restrictions. MOSHA inspected the radiator fill station on November 21 and 22, 1991. On November 26, 1991, Kunferman reported to work at the radiator fill station. A supervisor informed her that her medical restrictions had been removed, which Dr. Nesvacil confirmed.

After her restrictions were removed, Kunferman's performance deteriorated. Ford repeatedly found her work inadequate and took her through seven steps of progressive discipline, each of which Kunferman grieved. Ford finally terminated Kunferman's employment for "poor and careless workmanship." Kunferman filed a workers' compensation action in Minnesota state court, and was awarded benefits.

Kunferman then sued Ford in state court alleging gender discrimination in violation of the Minnesota Human Rights Act and retaliatory discharge in violation of sections 181.932 ("whistle blowing") and 176.82 (filing workers' compensation claims) of the Minnesota Statutes. Ford removed the action to federal district court, based on diversity of citizenship, 28 U.S.C. § 1446(b). The

3

district court granted Ford's motion for summary judgment.  Kunferman appeals.

## II.  DISCUSSION

We review a grant of summary judgment de novo, applying the same standards as the district court.  Enos v. Key Pharmaceuticals, Inc., 106 F.3d 838, 839 (8th Cir. 1997).  We consider the facts in the light most favorable to Kunferman, the party opposing summary judgement.  Midwest Printing, Inc. v. AM Int'l, Inc., No. 96-2099, slip op. at 3 (8th Cir. March 4, 1997).  Minnesota law controls this diversity case, and we review the district court's interpretation of that law de novo.  Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

To survive a motion for summary judgment, a plaintiff claiming unlawful retaliation under Minnesota law must produce evidence sufficient to create a genuine issue of material fact as to whether her protected activity caused the retaliation.  Dietrich v. Canadian Pac. Ltd., 536 N.W.2d 319, 327 (Minn. 1995).  Minnesota employs the three-part McDonnell Douglas analysis to retaliation claims.  Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 444 (Minn. 1983) (citing McDonnell Douglas v. Green, 411 U.S. 792 (1973)).

A prima facie case of retaliatory discharge under Minnesota law consists of: (1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two.  Dietrich, 536 N.W.2d at 327.  In Kunferman's case, the first two elements are clearly met.  Ford concedes that Kunferman engaged in protected activity.  Similarly, it is uncontroverted that Kunferman suffered an adverse employment

4

action. The removal of the medical restrictions is the action at issue, since Kunferman argues she was discharged only because she was assigned to jobs she was physically unable to perform.

Kunferman has failed, however, to establish the causation element. Timing alone cannot establish retaliatory intent. Hubbard, 330 N.W.2d at 445-46. An employee must establish the employer's knowledge of protected activity. Bohm v. L.B. Hartz Wholesale Corp., 370 N.W.2d 901, 908 (Minn. Ct. App. 1985) (dismissing former employee's retaliation claim because "management was not aware of [her] sex discrimination claim when she was terminated"). Thus, in order to overcome a motion for summary judgment, Kunferman must show that the person who lifted her medical restrictions knew of her protected activities.

Kunferman claims that an internal Ford memorandum establishes that Dr. Nesvacil knew about the MOSHA complaint when he removed the restrictions. The document, dated October 15, 1991, reports Ford's internal air quality testing and lists several employees on the routing line, including "W. Hinger, R.N." The memo refers to "attached data sheets," recording test results for individual employees. One of those sheets lists test results for "R. Kunferman." Kunferman asserts that this memo informed the doctor that she was responsible for the MOSHA complaint. This assertion is untenable for three reasons. First, the memo only reports the results of internal testing, and says nothing about any MOSHA complaints. Second, the data sheet for "R. Kunferman" does nothing to single her out in comparison with other tested employees. Third, Kunferman has presented no evidence that the doctor even saw this memo. Indeed, Dr. Nesvacil states in his affidavit that he was not aware of any protected activity when he lifted Kunferman's restrictions.

5

Alternatively, Kunferman asserts that Dr. Nesvacil was directed by unidentified Ford managers to lift her restrictions. In support of this claim, she offers only her own deposition testimony that Nesvacil was "sheepish" and "nervous" when he informed her that the restrictions were lifted; the fact that a supervisor knew of the decision before Kunferman herself was informed; and the doctor's failure to re-examine her on the date of her termination. This evidence does not create a controverted issue of fact on the causation issue. Kunferman must substantiate her allegations with sufficient probative evidence "based on more than mere speculation, conjecture, or fantasy." Wilson v. International Business Machines Corp., 62 F.3d 237, 241 (8th Cir. 1995). Kunferman has not presented evidence sufficient to create a genuine issue of material fact as to causation, so summary judgment was appropriate.

Kunferman's other claims are similarly unavailing. Her allegation of gender discrimination centers around a verbal reprimand she received when a machine she was using malfunctioned. There is no evidence linking this incident to her termination and Kunferman does not allege that this treatment was severe or pervasive. Therefore, she has not stated an actionable claim under the Minnesota Human Rights Act. See Klink v. Ramsey County, 397 N.W.2d 894, 901 (Minn. Ct. App. 1986).

Finally, Kunferman asserts that the district court erred by not granting preclusive effect to certain findings made by the state workers' compensation court. Under Minnesota law, collateral estoppel was not appropriate. Graham v. Special Sch. Dist. No. 1, 472 N.W.2d 114, 119 n.7 (Minn. 1991)(refusing to apply preclusion in retaliatory discharge case because fact-finder in first hearing

had not conducted <u>McDonnell Douglas</u> analysis).  The district court did not err in its ruling.

## III.  CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed.

HEANEY, Circuit Judge, concurring.

I would affirm on the basis of the district court's opinion, which held, in substance, that Kunferman had established a prima facie case of retaliation, but failed to produce any evidence that Ford's non-discriminatory explanation for its conduct was pretext for wrongful retaliation.  The record supports that Dr. Nesvacil removed Kunferman's work restrictions based both on his own evaluation of Kunferman and the independent specialist's written report.  Neither doctor was aware that Kunferman had filed either a MOSHA or workers' compensation complaint. Because I believe we should follow the reasoning of the district court, I simply concur in the result of the majority opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

7