**Donald E. DIEZ, Appellant,**

v.

**MINNESOTA MINING & MANUFACTURING, Respondent.**

No. C5-97-83.

Court of Appeals of Minnesota.

June 17, 1997.

Review Denied Aug. 21, 1997.

Richard T. Wylie, Dee Rowe, Minneapolis, for Appellant.

Thomas P. Kane, Kathleen M. Mahoney, David M. Wilk, Oppenheimer Wolff & Donnelly, St. Paul, for Respondent.

Considered and decided by KALITOWSKI, P.J., and RANDALL and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

In this age discrimination case, appellant Donald E. Diez challenges the district court's grant of summary judgment in favor of Minnesota Mining & Manufacturing (3M), arguing there are genuine issues of material fact. We affirm.

## FACTS

Diez worked for 3M from 1962 until August 1, 1992, when he retired at age 58 from 3M's Tape Group as part of a voluntary severance plan. Diez's salary grade had been reduced in 1990, but because he believed that he continued to do the same work, he requested in 1992 that his job be re-evaluated so he could regain his former salary grade.

At the time Diez's request was pending, 3M announced the voluntary severance plan, which was adopted to "downsize" and reorganize the Tape Group. In order to take part in the plan, employees had to submit a request by June 3, 1992, and terminate their employment no later than August 1, 1992.

On April 15, 1992, Diez tape recorded a conversation with William Rowe, Tape Group marketing director. The two were discussing the voluntary severance plan, and Rowe said that opportunities in the Tape Group might be limited. Specifically, Rowe said:

[Rowe:] So, I think that the whole future is one of down-sizing. Why, I guess have to determine whether you feel that in a downsizing mode the opportunities are going to increase or decrease, actually that's what you gotta really take a look at. * * * generally speaking I would say that the opportunities, although there will be using the domino effect, there will be some opportunities, but I don't think overall there will be. I don't think over long term there will be for anybody who is in that generally category, the uh,

[Diez:] General category of what?

[Rowe:] Oh, those who are in that area of potential pre retirement uh, leave people.

[Diez:] Yeah, people in their mid 50's and higher

[Rowe:] Oh sure, sure * * *.

In May 1992, Diez gave a human resources manager a list of grievances and alleged discrimination that had taken place in the previous 10 years. The manager conducted an investigation but did not find any evidence that Diez was discriminated against on the basis of age.

Diez decided to take early retirement. He filled out an application for the voluntary plan on June 1, 1992. He wrote on the application form that he was terminating his employment "under duress" and that it was effective December 31, 1992, rather than August 1, 1992. When asked during a deposition why he wrote that he was "under duress," Diez said, "I felt I was being treated

unfairly because of my age and I felt squeezed out."

On June 25, 1992, 3M informed Diez that pursuant to his request, his annual salary would increase by about $6,000 per year. Meanwhile, on July 1, 1992, 3M rejected Diez's application for the voluntary severance plan because he had added the "under duress" language and indicated a December ending date. Diez was told he could complete the form as directed or continue working. On July 7, 1992, Diez completed another application. He retired on August 1, 1992. After Diez left, his position was consolidated with that of his manager, and a 48–year–old was appointed to the new position.

Diez filled out an intake questionnaire from the Minnesota Department of Human Rights on May 19, 1993. He filed a charge of discrimination on June 10, 1993. The Human Rights Department later dismissed the charge for lack of evidence. Diez then filed a lawsuit in federal district court. The court granted 3M's motion for summary judgment, concluding that because the intake questionnaire could not serve as an administrative charge, Diez failed to file a charge within the federal statutory time constraints. The Eighth Circuit Court of Appeals affirmed the decision. *Diez v. Minnesota Mining & Mfg. Co.,* 88 F.3d 672 (8th Cir. 1996). Diez then filed this action in state district court. 3M moved for summary judgment. The court initially denied the motion, but after the close of discovery, 3M renewed its motion, and the court granted it.

## ISSUES

1. Is Diez's age discrimination claim time-barred?

2. Was Diez constructively discharged?

3. Are there genuine issues of material fact regarding Diez's claim of age discrimination?

## ANALYSIS

On appeal from summary judgment, we ask whether any genuine issues of material fact exist and whether the district court erred in applying the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990).

Diez cites to federal cases holding that summary judgment should seldom be used in employment discrimination cases. *See, e.g., Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994). But our supreme court has rejected that notion, stating that it "is not the law in Minnesota." *Dietrich v. Canadian Pac. Ltd.,* 536 N.W.2d 319, 326 n. 9 (Minn.1995).

■ 1. 3M contends that Diez's claim is time-barred because it was not filed within one year of the alleged discriminatory conduct as required by statute. The district court concluded that it was not necessary to rule on this issue because it found that Diez's claim failed on the merits. We may rule on an issue not decided by the district court when the question is determinative of the entire controversy and when neither party is advantaged or disadvantaged by not having a prior ruling on the question. *Harms v. Independent Sch. Dist. No. 300,* 450 N.W.2d 571, 577 (Minn.1990).

The Minnesota Human Rights Act requires a plaintiff to file a charge of discrimination within one year of "the occurrence of the practice." Minn.Stat. § 363.06, subd. 3 (1996). In *Turner v. IDS Fin. Servs., Inc.,* 471 N.W.2d 105 (Minn.1991), the supreme court explained that when construing the phrase "occurrence of the practice," courts should examine "the discriminatory act rather than when the consequences of that act become most painful." *Id.* at 107–08. This court has held that in an age discrimination case involving an early retirement plan, the statute of limitations begins to run on the day the plaintiff received notice of the allegedly discriminatory retirement program. *Anderson v. Northwestern Nat'l Life Ins. Co.,* 480 N.W.2d 363, 365 (Minn.App.1992).

We agree with 3M's argument that because Diez believed he was a victim of discrimination no later than June 1, 1992, his charge, filed June 10, 1993, was more than a year after "the occurrence of the practice" and therefore untimely. Evidence that Diez thought he was being discriminated against more than a year before filing the charge includes: (1) he heard Rowe's comments in April 1992 about limited opportunities; (2) in a memo dated May 21, 1992, Diez stated that

3M's personnel management procedure "basically is an age discrimination situation"; (3) on June 1, 1992, he wrote on his application for the voluntary severance plan that he was retiring "under duress"; and (4) he said that when he filled out the application, he felt he was being treated unfairly because of his age.

We reject Diez's argument that the statute of limitations began to run on his last day of work because he was constructively discharged. *See Hukkanen v. International Union of Operating Eng'rs,* 3 F.3d 281, 285 (8th Cir.1993) (noting that in cases of constructive discharge, discharge serves as "last occurrence" of discrimination). As we explain below, Diez was not constructively discharged. The caselaw instructs us to look at the time at which the alleged discrimination occurred, and there is no dispute that Diez believed he was a victim of discrimination more than a year before filing his charge.

■ 2. Even if we were to reach the merits of Diez's claim, we conclude that it fails because Diez was not constructively discharged and there are no genuine issues of material fact precluding summary judgment in favor of 3M. "A constructive discharge occurs when an employee resigns in order to escape intolerable working conditions caused by illegal discrimination." *Continental Can Co., Inc. v. State,* 297 N.W.2d 241, 251 (Minn. 1980). The employer must have created the intolerable working conditions "with the intention of forcing the employee to quit." *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir.1981). If the employee cannot prove the employer consciously intended to force the employee to quit, he or she must prove that the employer intended "the reasonably foreseeable consequences of its [discriminatory] actions." *Hukkanen,* 3 F.3d at 284. A reasonable person standard is used to judge whether the working conditions were intolerable. *West v. Marion Merrell Dow, Inc.,* 54 F.3d 493, 497 (8th Cir.1995).

■ Diez contends that it was reasonably foreseeable that 3M's intentional actions—particularly Rowe's comments—would lead to Diez's early retirement. We disagree. Applying a reasonable person standard, it is clear that Diez was not constructively discharged. Before Diez signed the second application for the voluntary severance plan, he was notified that he had received a salary increase and that he could continue employment, but he voluntarily chose to leave. The undisputed evidence does not show that Diez was subject to intolerable conditions or that 3M engaged in discriminatory actions with the intent to force Diez to retire.

3. The Human Rights Act prohibits employers from discriminating against employees on the basis of age with respect to termination or terms, conditions, or privileges of employment. Minn.Stat. § 363.03, subd. 1(2)(b), (c) (1996). Diez contends there was both direct and indirect evidence of age discrimination against him.

■ When a plaintiff alleges direct evidence of discriminatory intent, it is not necessary to use the *McDonnell Douglas* analysis. *Feges v. Perkins Restaurants, Inc.,* 483 N.W.2d 701, 710 n. 4 (Minn.1992). Diez claims that Rowe's statement about lack of opportunities for older employees at 3M is direct evidence of discrimination. We disagree, because the statement was a "stray remark" and because Rowe was not in a position to be making decisions about Diez's career.

■ Stray remarks made in the workplace cannot serve as direct evidence of discrimination. *Beshears v. Asbill,* 930 F.2d 1348, 1354 (8th Cir.1991). For example, a statement by a company's director of human resources that he was concerned that a plaintiff's termination might violate age discrimination laws was held to be a stray remark. *Bashara v. Black Hills Corp.,* 26 F.3d 820, 824 (8th Cir.1994). Statements made by individuals who do not take part in the decision to discharge an employee also cannot be direct evidence of discrimination. *Frieze v. Boatmen's Bank of Belton,* 950 F.2d 538, 541 (8th Cir.1991); *see also Slathar v. Sather Trucking Corp.,* 78 F.3d 415, 419–20 (8th Cir.1996) ("Stray remarks and statements by nondecisionmakers are not direct evidence of discriminatory motive."), *cert. denied,* —— U.S. ——, 117 S.Ct. 179, 136 L.Ed.2d 118 (1996).

Rowe's statement was made while discussing how downsizing would limit opportunities for promotion. Given the context of Rowe's statement, the fact that Diez actually received a raise after Rowe's statement, and the fact that Rowe was not a decisionmaker with respect to Diez, the statement is not direct evidence of discrimination.

Diez argues that 3M's use of age-specific data in planning the reorganization is also direct evidence of discrimination. We agree with 3M, however, that the documents do not prove anything because Diez has conceded that the voluntary severance plan was not in itself discriminatory.

 Diez contends that there is also indirect evidence of discrimination. In analyzing indirect evidence in discrimination claims, we use the three-step test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). This analysis requires that (1) a plaintiff prove a prima facie case of discrimination, (2) a defendant offer legitimate, nondiscriminatory reasons for its actions, and (3) the plaintiff prove that those reasons were a mere pretext for discrimination. *Sigurdson v. Isanti County*, 386 N.W.2d 715, 720 (Minn. 1986). To establish a prima facie case, the plaintiff must show:

> (1) that plaintiff is a member of a protected group; (2) that plaintiff sought and was qualified for opportunities that the employer made available to others; (3) that plaintiff, despite [his or her] qualifications, was denied those opportunities; and (4) the opportunities remained available or were given to other persons with plaintiff's qualifications.

*Dietrich*, 536 N.W.2d at 323–24. Because the fourth element is difficult to prove in a case involving downsizing, courts have held that in such cases, a plaintiff needs to meet the first three requirements and also come forward with additional evidence that age was a factor in termination. *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1165–66 (8th Cir. 1985); *Dietrich*, 536 N.W.2d at 324 (adopting *Holley*). Diez cannot establish a prima facie case because under the second prong, there is no evidence that Diez sought opportunities available to others. Instead, he voluntarily retired. *See Anderson*, 480 N.W.2d at 367 (noting that when employee voluntarily elects to accept employer's offer of early retirement and special benefits, that is not prima facie evidence of discrimination). Even if Diez could make a prima facie case, the evidence shows that the voluntary severance plan was adopted with the nondiscriminatory intent of streamlining the Tape Group's operations. Diez has not produced sufficient evidence to create a genuine issue of material fact regarding whether 3M's reasons were pretextual.

## DECISION

Because Diez believed he was a victim of discrimination more than a year before filing an administrative charge, his claim is time-barred. Even if Diez's claim was considered on the merits, it fails because he was not constructively discharged and the undisputed facts show that there is no direct evidence of discrimination and there is insufficient indirect evidence of discrimination to support a claim.

**Affirmed.**