Claude SMITH, Plaintiff,

v.

JONES WAREHOUSE, INC., et al., Defendants.

No. 83 C 4657.

United States District Court, N.D. Illinois, E.D.

Aug. 27, 1984.

Chanon Williams, Chicago, Ill., for plaintiff.

Lynne F. Siegel, Richard E. Lieberman, Ross & Hardies, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Claude Smith ("Smith") charges his former employer Jones Warehouse, Inc. ("Jones") with employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17.[1] Jones has moved for dismissal under Fed.R.Civ.P. ("Rule") 12(b)(1) and 12(b)(6) on the ground Jones does not meet the definition of an "employer" to which Title VII § 701(b), 42 U.S.C. § 2000e(b) applies.[2] Both sides have submitted evidence in support of their positions. For the reasons stated in this memorandum opinion and order Jones's motion is denied.

"Employer" in Title VII terms means only (42 U.S.C. § 2000e(b)) "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." Both sides agree if Jones is evaluated without reference to any related entities it is not an "employer," because *it* always had less than 15 employees. However Smith argues Jones and its parent company, called Frank E. Greene & Son, Inc. ("Greene") during the relevant calendar years, should be considered as a single entity for Title VII purposes. If such an aggregation of employees is warranted, both sides agree the resulting Jones-Greene entity had at least 15 employees at all relevant times.

Jones originally claimed employers may be aggregated only if their separate existence is a "sham." It proved the companies were in fact separate legal entities and thus showed there was no "sham." But "sham" is not the test. For National Labor Relations Board purposes, existence of a joint employment relationship depends on four criteria: interrelation of operations, common management, centralized control of labor relations and common ownership. See *Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 256, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965) (per curiam). *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 392 (8th Cir.1977) first applied that same standard to Title VII. It has been applied consistently ever since. See *Armbruster v. Quinn*, 711 F.2d 1332, 1337–38 (6th Cir.1983), and cases cited therein.

---

1. Smith's Complaint originally contained two counts, but Count I has been dismissed on statute of limitations grounds. Count I alleged Smith's labor union and Jones had violated Labor Management Relations Act of 1947 § 301, 29 U.S.C. § 185. This Court dismissed Count I against the union on December 12, 1983 and against Jones on January 6, 1984.

2. Jones invoked not only Rule 12(b)(6) but Rule 12(b)(1) as well, apparently on the theory this Court has no "jurisdiction" to enforce Title VII against a company not meeting the definition of "employer." Jones's motion seems to fit more neatly under Rule 12(b)(6), for once Smith alleges a Title VII violation he has raised a federal question, and this Court then has the power to determine whether Jones is an entity capable of violating Title VII.

██ Both sides now have proffered evidence (documents, affidavits and a deposition transcript) on those four factors. In evaluating that evidence, this Court draws all reasonable inferences in favor of Smith as the non-moving party:

1. To the extent Jones's motion is properly characterized as a Rule 12(b)(6) motion for failure to state a claim (see n. 2), the last sentence of Rule 12(b) requires it to be treated as one for summary judgment under Rule 56.[3]

2. Even if Jones's motion were properly viewed as pertaining to subject matter jurisdiction under Rule 12(b)(1), this Court would tentatively draw such inferences in favor of the exercise of jurisdiction, reserving until trial the question whether Smith has justified application of Title VII by a preponderance of the evidence.

██ Each of the four factors weighs at least to some extent in favor of viewing Jones and Greene as a single entity:

1. There was a fair amount of interrelation between the operations of Jones and Greene. They were located in a single building, which Greene owned and part of which Jones leased from Greene. Greene was an important customer of Jones, which stored and delivered Greene's merchandise for a fee. Greene sold clerical and accounting services to Jones.

2. Jones and Greene had common management at the upper levels. Both their slates of corporate officers and their boards of directors were identical.

3. Centralized control of labor relations is the most important of the four factors. *General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Public Service Co. of Indiana,* 705 F.2d 238, 242 (7th Cir.1983). Control of labor relations by Jones and Greene, if not wholly centralized, was certainly interrelated: .

(a) Most of Jones's employees were unionized. Its two who were not un-ionized operated under the same personnel guidelines and policies as Greene's employees (all of whom were non-union). Those guidelines were issued by Greene's parent company. Jones's two non-unionized employees were paid by Greene and received W–2 forms listing Greene as their employer. Jones reimbursed Greene for the salaries of those two employees.

(b) On one occasion a Jones employee received a letter of termination on Greene stationery, sent by the president of both Jones and Greene. He acted in his capacity as Greene president because the employee had made a bad impression on Greene's customers while delivering merchandise.

(c) Occasionally a Greene employee substituted for one of Jones's non-unionized employees.

(d) Jones's lower level managers occasionally sought assistance from Greene. For example, Greene hired counsel for Jones in this litigation.

4. Common ownership is present, as Greene owned all of Jones's outstanding stock.

All four factors taken together present *at least* "a prima facie case" for disregarding the legal separateness of Jones and Greene. See *Armbruster,* 711 F.2d at 1335, quoting from *Welsh v. Gibbs,* 631 F.2d 436, 438–39 (6th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981). Even without the benefit of all reasonable inferences, Smith is entitled not to have his case dismissed at this early stage of the proceedings.

Jones's motion to dismiss under Rule 12(b)(1) and 12(b)(6) is denied. Jones is ordered to answer Complaint Count II on or before September 7, 1984.

---

**3.** That dictates the reasonable-inference rule. See *Korf v. Ball State University,* 726 F.2d 1222, 1226 (7th Cir.1984).