**Juanita FAHEY, Respondent,**

v.

**AVNET, INC., Relator.**

No. CX–94–856.

Court of Appeals of Minnesota.

Dec. 20, 1994.

Review Denied Feb. 14, 1995.

Eric R. Miller, Lisa M. Bankey, Oppenheimer, Wolff & Donnelly, St. Paul, for relator.

George L. May, Hastings, for respondent.

Considered and decided by RANDALL, P.J., and SCHUMACHER, and MANSUR,* JJ.

## OPINION

SCHUMACHER, Judge.

Relator Avnet, Inc. argues that, because Avnet Computer had less than 50 employees in Minnesota and is not subject to relevant portions of the Minnesota Human Rights Act, the administrative law judge (ALJ) erred in determining that the Office of Administrative Hearings for the Minnesota Department of Human Rights had subject matter jurisdiction to hear the case. Avnet, Inc. further contends that the ALJ erred in finding Avnet, Inc. discriminated against respondent Juanita Fahey on the basis of disability, claiming she is not disabled within the meaning of the Minnesota Human Rights Act. Avnet, Inc. also challenges the amount of damages awarded to Fahey. We affirm in part and reverse in part.

## FACTS

Avnet, Inc. is a corporation that sells and services computers. Avnet, Inc. conducted business through three operating groups, one of which was the Electronic Marketing Group. The Electronic Marketing Group, in turn, was made up of four divisions: Hamilton/Avnet Electronics, Hamilton/Avnet Computer, Avnet Computer Technologies, Inc., and Time Electronics.

On July 1, 1990, Hamilton/Avnet Computer and the distribution segment of Avnet Computer Technologies were merged to form "Avnet Computer," a division of Avnet, Inc. Hamilton/Avnet Electronics and Time Electronics remained separate divisions of Avnet, Inc. The remainder of Avnet Computer Technologies continued as a wholly-owned subsidiary of Avnet, Inc.

Fahey was employed by Avnet, Inc. or its predecessors, divisions or subsidiaries from January 29, 1979 until July 10, 1991. At the time her employment terminated, she was working for Avnet Computer. In July 1991, Avnet Computer employed 18 people in Minnesota; the remaining divisions of the Electronic Marketing Group employed 17 people; and Avnet Computer Technologies employed 35 people. These 70 employees worked in the same office building in Eden Prairie.

Fahey began her employment with the company as a receptionist and then was transferred to the order entry department. She held a number of positions during her time with the company, eventually performing administrative and clerical duties for the company's account with 3M. Upon the July 1990 merger, Fahey's employer changed from Avnet Computer Technologies to Avnet Computer.

In May 1990, Fahey experienced cramping in her hands when she typed for extended periods. Upon examination, a neurologist found that Fahey had either motor neuron disease or spinal muscular atrophy. The neurologist directed Fahey to limit her activities, particularly typing. Fahey reported the doctor's recommendation to her supervisor. The supervisor, Fahey, and the other two administrative support personnel met and decided that their duties would be redistributed so that Fahey had less typing while the other two employees had more. Fahey agreed to take on more responsibility with respect to answering telephones, opening mail and faxing.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 10.

In May 1991, Larry Zweigbaum became the sales unit director for Avnet Computer and Fahey's supervisor. Fahey told Zweigbaum of her physical limitations and informed him one of the other support personnel did the typing for the 3M account. During their meeting, Zweigbaum told Fahey that all administrative jobs required typing.

Zweigbaum determined that one of the three Avnet Computer administrative support positions must be eliminated. Of the two remaining positions, one would move to 3M to support the 3M account on-site and the other would handle the administrative work at the Eden Prairie office. In June 1991, Zweigbaum offered Fahey the on-site position at 3M. The job description required typing. Fahey told Zweigbaum she could not physically perform the job as long as it included the amount of typing that she knew the position required. Zweigbaum asked Fahey whether she would accept the job if the typing were eliminated and she said she would.

Zweigbaum testified that after his conversation with Fahey, he determined it was not feasible to sever the typing from the remaining duties of the 3M on-site job. He said such a modification would hinder efficiency and that the remaining employee in the Eden Prairie office could not perform all of the necessary job duties plus the typing duties from the 3M job. He testified that he believed Fahey had in effect turned down the 3M job because she stated she could not do the typing associated with it. The job was eventually offered to another employee, who accepted it.

On July 10, 1991, Fahey met with Zweigbaum and Jennifer Hazel, the human resources director for Avnet Computer Technologies. Zweigbaum told Fahey that since she was unable to complete the typing requirements in the job at 3M, her position was terminated. He told her she had been an excellent employee and that she could expect a good recommendation. During the fall of 1991, Avnet offered Fahey a temporary receptionist position. She turned it down because she wanted to continue her search for permanent employment. She was hired in March 1992 as a receptionist for a different computer firm.

Fahey filed a charge of disability discrimination with the Minnesota Department of Human Rights, and a hearing was held before an ALJ. The ALJ concluded that it had subject matter jurisdiction over the claim and that Avnet, Inc. discriminated against Fahey. Fahey was awarded compensatory and punitive damages, as well as attorney fees and costs. The ALJ also ordered Avnet, Inc. to pay a civil penalty and pay for litigation and hearing costs.

## ISSUES

1. Did the ALJ err in determining that the Office of Administrative Hearings for the Department of Human Rights had subject matter jurisdiction over Fahey's discrimination claim?

2. Did the ALJ err in finding that Avnet, Inc. discriminated against Fahey on the basis of disability?

3. Did the ALJ err in awarding damages?

## ANALYSIS

This court may reverse or modify an ALJ's decision if it is in violation of constitutional provisions, in excess of an agency's authority or jurisdiction, arbitrary or capricious, unsupported by substantial evidence, or affected by an error of law. Minn.Stat. § 14.69 (1992). Agency decisions are presumed to be correct. *Crookston Cattle Co. v. Minnesota Dept. of Natural Resources,* 300 N.W.2d 769, 777 (Minn.1980). Where more than one inference may be drawn from the evidence or where the record contains conflicting evidence, this court will uphold the ALJ's factual findings. *State by Cooper v. Moorhead State Univ.,* 455 N.W.2d 79, 82 (Minn.App.1990).

1. In 1991, the Minnesota Human Rights Act required employers with 50 or more permanent, full-time employees to reasonably accommodate known disabilities of a qualified disabled person, unless the accommodation would impose an undue hardship. Minn.Stat. § 363.03, subd. 1(6) (1990). Avnet, Inc. contends the ALJ exceeded her jurisdictional authority in hearing the case. Avnet, Inc.

argues the ALJ improperly included employees of other Avnet, Inc. divisions and subsidiaries when computing the number of employees for jurisdictional purposes. We disagree.

■ Principles developed by federal courts in Title VII cases are instructive and may be applied when interpreting the Minnesota Human Rights Act. *Continental Can Co. v. State*, 297 N.W.2d 241, 246 (Minn. 1980). Courts determine whether the entities are "operating separately or whether on the other hand they are of such coagulation that they must be considered one." *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 391 (8th Cir.1977). In deciding if Avnet Computer and Avnet Computer Technologies were an integrated enterprise, we look to four standards promulgated by the National Labor Relations Board: (1) common ownership or financial control, (2) centralized control of labor relations, (3) interrelation of operations, and (4) common management. *Id.* at 392. The presence of one of the factors is not determinative, but "[a]ll four criteria need not be present in all cases." *Armbruster v. Quinn*, 711 F.2d 1332, 1337–38 (6th Cir.1983).

■ The first factor, common ownership, is satisfied since Avnet Computer Technologies is a wholly-owned subsidiary and Avnet Computer is a division of Avnet, Inc. The second factor, centralized control of labor relations, is the most important of the four factors. *Smith v. Jones Warehouse, Inc.*, 590 F.Supp. 1206, 1208 (N.D.Ill.1984). Jennifer Hazel, Avnet Computer Technologies's human resource director, had substantial involvement in Avnet Computer's labor affairs. Fahey consulted with Hazel regarding an employment questionnaire form, Hazel consulted with Zweigbaum about offering Fahey the 3M position, Hazel was present during the meeting at which Fahey was terminated, Hazel signed a settlement agreement and general release provided to Fahey at the termination meeting, and Hazel later offered Fahey a temporary receptionist job.

Hazel's extensive involvement with Avnet Computer suggests it was not operating separately from Avnet Computer Technologies. Furthermore, Hazel's involvement with Avnet Computer would indicate to Fahey that the two organizations were interrelated. In *Armbruster*, the court noted

the most important requirement is that there be sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer.

711 F.2d at 1337. It would be reasonable for Fahey to believe that Hazel, in her official capacity as Avnet Computer Technologies's human resources director, was partly responsible for Fahey's termination.

■ Other considerations in the centralized labor control factor include whether the entities use the same personnel guidelines and policies and whether employees are transferred among entities. *Smith*, 590 F.Supp. at 1208; *Armbruster*, 711 F.2d at 1338. Here, Avnet, Inc.'s affirmative action policy was applicable to both Avnet Computer and Avnet Computer Technologies and the two entities exchanged information on hiring policy. Additionally, Fahey was transferred from Avnet Computer Technologies to Avnet Computer when the sales division of Avnet Computer Technologies merged with Hamilton/Avnet Computer, although her responsibilities did not change.

■ Elements to consider in the third factor, interrelation of operations, include whether the entities share office space or sell services to one another and the occasional transfer of employees between entities. *Smith*, 590 F.Supp. at 1208; *E.E.O.C. v. Fin. Assur., Inc.*, 624 F.Supp. 686, 690 (W.D.Mo. 1985). Avnet Computer and Avnet Computer Technologies shared the same office building and Fahey was transferred from Avnet Computer Technologies to Avnet Computer.

■ At issue in the last criterion, common management, is whether the same individuals manage and control the two entities. *Beckwith v. International Mill Services Inc.*, 617 F.Supp. 187, 189 (D.C.Pa.1985). For the most part, Avnet Computer and Avnet Computer Technologies appear to have main-

tained separate management, although the involvement of Hazel, Avnet Computer Technologies's human resource director, in Avnet Computer's affairs is noteworthy.

Because there is sufficient evidence to indicate that Avnet Computer and Avnet Computer Technologies are integrated, we find that the ALJ did not err in counting employees of both Avnet Computer Technologies and Avnet Computer in determining that proper subject matter jurisdiction existed.

■ 2. Avnet, Inc. contends that the ALJ erred in finding that Avnet, Inc. discriminated against Fahey on the basis of disability because Fahey is not disabled within the meaning of the Minnesota Human Rights Act. We agree.

■ The ALJ analyzed this case under the test set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). The test is only used when there is no direct evidence of discrimination and a disparate impact analysis is required. *State by Cooper v. Hennepin County,* 441 N.W.2d 106, 110 n. 1 (Minn.1989). Here, there is direct evidence that Fahey was terminated because she was unable to type.

■ As a complainant under the Minnesota Human Rights Act, Fahey bears the burden of proving she falls within one of the classes of individuals protected. *Id.* at 110. In other words, Fahey must show that she is disabled within the meaning of the Minnesota Human Rights Act.

The Minnesota Human Rights Act provides, in part:

Except when based on a bona fide occupational qualification, it is an unfair employment practice:

\* \* \* \* \* \*

(2) For an employer, because of \* \* \* disability

\* \* \* \* \* \*

(b) to discharge an employee; or

(c) to discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment.

Minn.Stat. § 363.03, subd. 1(2)(b), (c) (1990). The Minnesota Human Rights Act further requires an employer with 50 or more permanent full-time employees to

make reasonable accommodation to the known disability of a qualified disabled person \* \* \* unless the employer \* \* \* can demonstrate that the accommodation would impose an undue hardship on the business.

Minn.Stat. § 363.03, subd. 1(6) (1990). The Minnesota Human Rights Act defines a disabled person as

any person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.

Minn.Stat. § 363.01, subd. 13 (1990). In construing the definition of "disabled person" under the Minnesota Human Rights Act, it is appropriate to look to interpretations of section 504 of the Rehabilitation Act of 1973 because the language used to define a "handicapped individual" in section 504 is nearly identical to the definition used by the Minnesota legislature in the Minnesota Human Rights Act. *Hennepin County,* 441 N.W.2d at 110.

In *School Board of Nassau County v. Arline,* 480 U.S. 273, 279, 107 S.Ct. 1123, 1127, 94 L.Ed.2d 307 (1987), the United States Supreme Court concluded that regulations promulgated by the Department of Health and Human Services were helpful in determining whether a person was handicapped according to section 504. The regulations define "physical or mental impairment" as

any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; \* \* \*.

45 C.F.R. § 84.3(j)(2)(i)(A) (1990). In addition, the regulations define "major life activities" as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. 84.3(j)(2)(ii) (1990). Fahey's hand ailment can certainly be considered a disorder affecting her neurological

and musculoskeletal systems and thus a physical impairment under the regulations. In order to be a disability under the Minnesota Human Rights Act, however, her condition must materially limit a major life activity. Although work is a major life activity, the record does not indicate that Fahey's impairment prevents her from working. There is

> no authority for the proposition that failure to qualify for a single job because of some impairment * * * constitutes being limited in a major life activity. "The regulations define major life activity as, *inter alia*, 'working,' 45 C.F.R. § 84.3(j)(2)(ii), but not 'working at the specific job of plaintiff's choice.' "

*Hennepin County*, 441 N.W.2d at 111 (quoting *Tudyman v. United Airlines*, 608 F.Supp. 739, 745 (C.D.Cal.1984)). The record establishes that Fahey was medically precluded from typing, but she was able to perform a variety of other tasks. Her condition has not materially impaired her ability to work. She is qualified to obtain other jobs with similar responsibilities. In fact, following her discharge by Avnet, Inc., Fahey eventually secured a job that did not require typing. Thus, Fahey fails to meet the definition of a disabled person under the Minnesota Human Rights Act.

3. Because of our decision that the ALJ erred in concluding Avnet, Inc. discriminated against Fahey because of disability, it is not necessary to address Avnet, Inc.'s claim that the ALJ awarded excessive damages.

## DECISION

The ALJ correctly determined that proper subject matter jurisdiction existed because Avnet Computer Technologies and Avnet Computer were not sufficiently separate entities. The ALJ erred, however, in concluding that Fahey's physical condition is a disability within the meaning of the Minnesota Human Rights Act.

**Affirmed in part and reversed in part.**