**Dianne HOOVER, Appellant,**

v.

**NORWEST PRIVATE MORTGAGE BANKING, A DIVISION OF NORWEST FUNDING, INC., et al., Respondents.**

No. C8–99–1281.

Court of Appeals of Minnesota.

Feb. 15, 2000.

David W. Larson, Hessian & McKasy, P.A., Minneapolis, for appellant.

Barbara J. D'Aquila, Patrick R. Martin, Flynn & Gaskins, L.L.P., Minneapolis, for respondents.

Considered and decided by LANSING, Presiding Judge, WILLIS, Judge, and HALBROOKS, Judge.

## OPINION

LANSING, Judge.

The district court granted summary judgment against Dianne Hoover's employment-discharge claims. We affirm summary judgment on her claims for failure to reasonably accommodate disability and for reprisal because the submitted evidence fails to establish legally essential elements. We also affirm summary judgment on Hoover's negligent-supervision claim because it is preempted by the Minnesota Human Rights Act. The evidence is, however, sufficient to create a genuine issue of material fact on discriminatory discharge, and we reverse and remand on that claim but dismiss one of the three named Norwest defendants because the evidence does not demonstrate that it is a proper party.

## FACTS

Dianne Hoover worked for Norwest Funding, Inc., (Norwest) as a private mortgage banker from 1992 to February 1996. Norwest hired Hoover, who had more than 20 years' banking experience, to work as an originator, handling loans from application to closing. Hoover was a top loan producer and received positive employee evaluations. A 1995 review for compliance with internal policy and federal banking regulations showed that she was among the originators with the fewest compliance problems.

In May 1995, Hoover was diagnosed with fibromyalgia, a chronic-pain illness. Hoover's symptoms included severe headaches; back, neck, and shoulder pain; exhaustion; and sleep disturbances. She also suffered from depression and a diminished ability to concentrate. Hoover told her supervisor of the diagnosis and gave her a copy of a diagnosis letter that noted Hoover's need for exercise and stress-reduction practices, such as yoga. The letter did not indicate any need for work accommodations. Through the end of 1995 and into 1996, Hoover's symptoms became more pronounced, and she required more time to complete her work. She worked increasingly longer hours and stated that she used most of her nonwork time to sleep.

At about the same time, Hoover and other Norwest originators encountered decreasing availability of processors to provide clerical support and oversight for errors and omissions in processing loans. Hoover claims that she was denied the level of processor support provided to other high-producing originators. In meetings in June 1995 and September 1995, Hoover and other originators complained about the lack of processor support. Hoo-

ver also had several meetings with her supervisor and her team leader to explain the need for more support.

In late 1995, three processors complained of compliance problems in Hoover's files, and in December her supervisor requested a special audit. The audit revealed compliance problems in many of Hoover's files. Although the parties dispute whether the problems violated federal banking regulations, the evidence is undisputed that most of the cited practices were improper. In February, her supervisor and a previous supervisor met with Hoover to discuss the problems with her files and later notified Hoover that she was being discharged.

Hoover filed a complaint with the Minnesota Department of Human Rights in 1997, and the department found probable cause. Hoover then brought this suit against three Norwest entities. After preliminary discovery, Norwest successfully moved for summary judgment. Hoover disputes the entry of summary judgment on her claims for discriminatory discharge, failure to reasonably accommodate her disability, reprisal, and negligent supervision. Norwest Corporation, one of the three Norwest entities, disputes, by notice of review, that it is a proper defendant.

## ISSUES

I.  Has Hoover raised a genuine issue of material fact on whether her discharge from Norwest was motivated by intentional discrimination?

II.  Has Hoover raised a genuine issue of material fact on whether Norwest failed to provide a reasonable accommodation for her disability?

III.  Has Hoover raised a genuine issue of material fact on whether Norwest engaged in reprisal?

IV.  Does the Minnesota Human Rights Act preempt Hoover's negligent-supervision claim?

V.  Is Norwest Corporation a proper defendant?

## ANALYSIS

■ On appeal from summary judgment, we determine whether the case raises genuine issues of material fact and whether the district court erred in its application of the law. *Cummings v. Koehnen,* 568 N.W.2d 418, 420 (Minn.1997); *see* Minn. R. Civ. P. 56.03 (stating district court standard for summary judgment). In assessing the evidence, we take the view most favorable to the party against whom judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). But if the nonmoving party fails to raise a material issue of fact on any element essential to establishing its case, summary judgment is appropriate. *Lubbers v. Anderson,* 539 N.W.2d 398, 401 (Minn. 1995).

### I

■ The Minnesota Human Rights Act (MHRA) prohibits discharge of an employee because of that employee's disability. Minn.Stat. § 363.03, subd. 1(2)(b) (1998). When there is no direct evidence of discrimination, we analyze disability-discrimination claims using the shifting-burdens analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Sigurdson v. Carl Bolander & Sons, Co.,* 532 N.W.2d 225, 228 (Minn.1995). Under this analysis, the plaintiff first has the burden to establish a prima facie case of discrimination; if established, the burden of production shifts to the employer to rebut the prima facie case by presenting evidence of a legitimate, nondiscriminatory reason for its acts; and if the presumption is rebutted, plaintiff, to meet her ultimate burden, must show that the reason or justification stated by the employer is actually a pretext for discrimination. *Hasnudeen v.*

*Onan Corp.*, 552 N.W.2d 555, 556 (Minn. 1996). The plaintiff may sustain this burden " 'either directly by persuading the court that a discriminatory reason likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' " *Sigurdson v. Isanti County*, 386 N.W.2d 715, 720 (Minn.1986) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981)); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (prima facie case coupled with evidence of pretext allows factfinder to infer intentional discrimination).

■ To meet her initial burden of establishing a prima facie case of disability discrimination, Hoover must show that she is a disabled person, that she was otherwise qualified, that she was discharged, and that she was replaced or the work was reassigned to a nondisabled person. *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 442 (Minn.1983). Norwest disputes two of the four factors: that Hoover is a disabled person and that she is otherwise qualified to do the job from which she was discharged.

■ The evidence that Hoover is otherwise qualified is sufficient to survive summary judgment. Hoover's 20 years of experience in the banking industry, coupled with her positive performance evaluations until the time of discharge, provide adequate proof on that factor. Although Norwest disputes Hoover's capacity to perform the responsibilities of an originator, Hoover's evidence at minimum raises a genuine fact issue.

The more difficult question is whether Hoover has raised a triable issue on disability. A person is disabled for purposes of the MHRA if he or she "has a physical, sensory, or mental impairment which materially limits one or more major life activi-

ties." Minn.Stat. § 363.01, subd. 13 (1998). Norwest does not specifically dispute that Hoover meets the first part of the disability definition—that fibromyalgia and depression are impairments within the meaning of the MHRA. *See* 29 C.F.R. § 1630.2(h) (1998) (defining physical or mental impairment); *Chamberlain v. McNeil Consumer Prods. Co.*, No. 95 C 2073, 1998 WL 42271, at *4 (N.D.Ill. Jan. 29, 1998) (fibromyalgia); *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1132 (11th Cir.1996) (depression), *cert. denied*, 520 U.S. 1274, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997); *see also Hubbard*, 330 N.W.2d at 441 (Minnesota courts use principles arising from federal discrimination cases as a guide for interpreting MHRA); *Carl Bolander*, 532 N.W.2d at 228 (citing federal regulations as guides for determining whether plaintiff is disabled under MHRA). But Norwest disputes that Hoover meets the second part of the disability definition—that Hoover's impairment materially limits one or more major life activity. Minn.Stat. § 363.01, subd. 13.

"A 'major life activity' is a basic activity that the average person in the general population can perform with little or no difficulty." *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir.1999); 29 C.F.R. App. § 1630.2(i) (1998). Hoover asserts that two major life activities are limited by her impairments: work and sleep.

■ Work is a major life activity within the meaning of the MHRA. *Carl Bolander*, 532 N.W.2d at 228. To show that her ability to work is materially limited by her impairments, Hoover must show that she is "restricted in [her] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i) (1998); *DePaoli v. Abbott Lab.*, 140 F.3d 668, 672 (7th Cir.1998); *Webb v. Garelick Mfg.*, 94 F.3d 484, 487 (8th Cir.1996).

Hoover asserts that the increased amount of time she had to spend to complete her work and the limitations on her ability to concentrate, as compared to other originators, establish that her ability to work is materially limited. The federal regulations recognize that restrictions in the "duration under which an individual can perform a major life activity" constitute a substantial limitation. *Compare* 29 C.F.R. § 1630.2(j)(1)(i) (1998) ("substantially limits") *with* Minn.Stat. § 363.01, subd. 13 (less stringent threshold of "materially limits"). *See Carl Bolander,* 532 N.W.2d at 228 n. 3 (legislature amended statute from "substantially" to "materially" to establish a less-stringent standard than one used in federal statutes).

Hoover provided the report of a vocational expert, who concluded that Hoover was unable to perform a broad range of banking-related jobs, but that she would have been able to perform the originator duties with additional assistance and time. Hoover also provided medical opinion evidence, including a letter from her treating physician, Dr. Joseph Alfano. According to Alfano, Hoover was "materially limited in her ability to perform her job tasks, specifically with regard to pace, persistence, and concentration."

■ Norwest argues that the medical letters and report cannot be considered because they are unsworn and thus do not meet the requirements of Minnesota Rules of Civil Procedure 56.03 and 56.05. Unsworn statements may be excluded as unreliable evidence. *See, e.g., Carlisle v. City of Minneapolis,* 437 N.W.2d 712, 716 (Minn.App.1989). But no motion was made to strike the documents in the district court, and the evidence was considered for purposes of summary judgment. *See Lundgren v. Eustermann,* 370 N.W.2d 877, 881 (Minn.1985) (holding that unsworn letter from doctor part of record on summary judgment motion). In the absence of a motion to strike the submitted documents, we decline to exclude them on appeal. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (reviewing court hears only issues presented to district court).

■ Hoover's evidence, including the vocational expert's report, the doctors' letters, and particularly her treating doctor's letter, raises a genuine issue of material fact on whether she is materially limited in her ability to work. Hoover is a high-school graduate whose work experience is limited to the banking industry. Considering her education and skills, the banking industry is the relevant class of jobs. *See Webb,* 94 F.3d at 488 (in determining relevant class of jobs, court should consider various factors, including plaintiff's expertise, background, and job expectations); *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 724 (2d Cir.1994) (considering plaintiff's education and previous job experience to determine class of jobs). The evidence establishes that she requires additional clerical assistance and time to complete her work because of fibromyalgia, and the effects of her condition on her ability to concentrate demonstrate a genuine issue of fact on whether she is materially limited in her ability to perform this class of jobs.

The district court rejected Hoover's argument that she is materially limited, reasoning that she failed to provide evidence of any job that she had applied for and been denied because of her disability, as outlined in *Sigurdson v. Carl Bolander & Sons, Co.,* 532 N.W.2d at 228–29. *Carl Bolander,* however, was a refusal-to-hire case in which the plaintiff asserted no material limitations on his ability to work except that he had been denied a single job because of his impairment. *Id.* at 229. Because the only limitation the plaintiff alleged was a failure to be hired, the supreme court's inquiry centered on whether *that limitation* was present across a class of jobs or a broad range of jobs in different classes. *Id.*

■ Requiring all disability plaintiffs to show jobs for which they have applied and not been hired is too broad an application of *Carl Bolander*. This reading would result in defining a disabled person as one who cannot obtain or retain a job. To the contrary, many disabled people not only obtain and retain jobs, but excel, despite the limitations on their abilities to perform those jobs and their need for reasonable accommodation. When the alleged discriminatory action is not failure to hire, the proper inquiry to determine limitation centers on the specific alleged limitation. *See Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 785–86 (3d Cir.1998) (rejecting defendant's argument that plaintiff could not be substantially limited because he continued to work for the employer; proper focus was whether plaintiff's back condition, coupled with his personal characteristics, substantially limited ability to perform job); *Webb*, 94 F.3d at 488 (focusing on hand condition and whether resulting inability to type significantly restricted ability to perform class of jobs); 29 C.F.R. § 1630.2(j)(3)(i) (1998) ("substantially limits means significantly restricted in the ability to *perform* " a class of jobs) (emphasis added).

The analysis of the ability to perform must also take into account whether the impairment can be controlled by medication or some other mitigating measure. *See Sutton v. United Air Lines*, 527 U.S. 471, 119 S.Ct. 2139, 2146, 144 L.Ed.2d 450 (1999) (determination of whether there is substantial limitation must be made with reference to mitigating measures plaintiff employs); *Murphy v. UPS*, 527 U.S. 516, 119 S.Ct. 2133, 2137, 144 L.Ed.2d 484 (1999) (same); *see also Carl Bolander*, 532 N.W.2d at 228–29 (assessing diabetes impairment in its medicated state). The evidence demonstrates that despite exercise and prescription medications, Hoover still suffered from the symptoms of fibromyalgia, specifically pain and fatigue, that materially impaired her ability to work.

■ Although sleep is not included on the EEOC's list of major life activities, that list is not meant to be exclusive, and at least two federal courts have found that sleep is a major life activity within the meaning of the ADA. *See* 29 C.F.R. § 1630.2(i) (1998); *Pack*, 166 F.3d at 1305; *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 643 (2d Cir.1998). But Hoover has made no showing that her sleep disturbances—waking in the early morning hours and usually falling back asleep— were any more serious than those suffered by many people in the general population. *See Pack*, 166 F.3d at 1305 n. 6 (limitation must show significant restriction compared to the general population, not just "trouble getting to sleep or occasionally sleep[ing] fitfully") (quoting EEOC Compliance Manual).

Hoover has not demonstrated a material impairment in her ability to sleep. But the evidence of material impairment in her ability to work creates a genuine issue of material fact, and thus Hoover has satisfied the four-factor test necessary to create a presumption of discriminatory discharge.

■ Norwest, in turn, has rebutted the presumption of discrimination by presenting evidence of a legitimate, nondiscriminatory reason for Hoover's discharge. Norwest asserts that it discharged Hoover for failure to comply with both internal regulations for processing applications and with federal regulations that govern the banking industry. Whether or not the problems in Hoover's files constituted violations of federal law, the record establishes that many of the practices were improper and Norwest had a business interest in ensuring complete applications and timely processing. Consequently, the burden shifts back to Hoover to demonstrate pretext.

On the pretext prong of the *McDonnell Douglas* test, the federal circuit courts of

appeals have differed over what evidence a plaintiff must show in order to survive summary judgment. The conflict stems from differing interpretations of the Supreme Court's opinion in *St. Mary's Honor Center v. Hicks.* In *Hicks,* on a post-judgment appeal, the Supreme Court held that a prima facie case coupled with evidence of pretext does not compel judgment for the plaintiff. 509 U.S. at 511, 113 S.Ct. at 2749. The court emphasized that the plaintiff's ultimate burden was to show intentional discrimination and that pretext does not necessarily equal discrimination. *Id.; see also Fisher v. Vassar College,* 114 F.3d 1332, 1337–38 (2d Cir.1997) (discrimination does not hide behind every untruth). The Court recognized, however, that the plaintiff's prima facie case, coupled with a showing of pretext, does allow the factfinder to infer intentional discrimination even if it does not compel judgment. *Hicks,* 509 U.S. at 511, 113 S.Ct. at 2749. The Supreme Court has not indicated how the *Hicks* standard should be applied in the summary judgment context.

Most of the federal circuit courts of appeals interpret *Hicks* to allow plaintiffs to survive summary judgment on the pretext prong if they can show evidence that the employer's articulated reason for discharge is unworthy of belief. Lynn C. Hermle, *Summary Judgment Motions in Discrimination Cases: Bringing, Defending and Appealing,* 592 PLI/Lit 1127, 1150 (1998); *see also Combs v. Plantation Patterns,* 106 F.3d 1519, 1529 (11th Cir.1997); *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995); *cf. Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061,

1071–72, 1075 (3d Cir.1996) (discussing *Hicks* under equivalent standard for judgment as a matter of law). Other courts interpret *Hicks* to require that in addition to demonstrating that the articulated reason is unworthy of belief, the plaintiff's evidence of pretext must give rise to an inference of intentional discrimination. *See, e.g., Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 674 (1st Cir.1996); *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996) (discussing standard for summary judgment and judgment as a matter of law).[1]

■ The Minnesota courts have adopted the *Hicks* standard, but have not directly addressed it in the context of summary judgment. *Hasnudeen,* 552 N.W.2d at 557; *Doan v. Medtronic, Inc.,* 560 N.W.2d 100, 105 (Minn.App.1997), *review denied* (Minn. May 14, 1997). In pre-*Hicks* cases, the Minnesota Supreme Court has stated that the plaintiff may satisfy the pretext prong by showing that the articulated reason is either a pretext for discrimination *or* not worthy of belief. *See, e.g., Feges v. Perkins Restaurants, Inc.,* 483 N.W.2d 701, 711 (Minn.1992); *Isanti County,* 386 N.W.2d at 720. Guided by the majority position of the federal circuit courts and relying on the pre-*Hicks* reasoning of the Minnesota Supreme Court, we conclude that a plaintiff survives summary judgment on the pretext prong when the plaintiff shows that the employer's articulated legitimate reason is unworthy of belief, without inquiring whether the plaintiff's evidence also supports a reasonable inference of intentional discrimination. Although a plaintiff's ultimate burden at

---

1. We note that this issue has even caused division within individual federal circuit courts. *Compare EEOC v. Ethan Allen, Inc.,* 44 F.3d 116, 120 (2d Cir.1994) (prima facie case and pretext evidence preclude judgment as a matter of law for defendant) *with Holt v. KMI–Continental,* 95 F.3d 123, 129 (2d Cir. 1996) (requiring evidence of pretext and evidence that real reason was discriminatory). *See also Stanback v. Best Diversified Prod.,* *Inc.,* 180 F.3d 903, 912 (8th Cir.1999) (Arnold, J., concurring) (prima facie case plus pretext evidence will always entitle plaintiff to survive summary judgment) (interpreting *Ryther v. KARE 11,* 108 F.3d 832 (8th Cir. 1997) (en banc)); *Id.* at 912–13 (Hansen, J., concurring) (interpreting *Ryther* concurrence joined by nine judges to require pretext evidence and some evidence that the real reason was unlawful discrimination).

trial will be to show intentional discrimination, the plaintiff may meet that burden through the inferences that arise from a prima facie case and pretext evidence. *See Randle,* 69 F.3d at 452 (reasoning that if inference created by evidence of pretext is enough to prevail at trial, "it is surely sufficient to permit a plaintiff to avoid summary judgment so that the plaintiff can get to trial").

■ Hoover has presented evidence that the proffered reason for her discharge is pretext because Norwest did not put a high priority on compliance issues and because Norwest knew that many originators had similar problems in their files but that no one else was ever disciplined or discharged for compliance problems. Hoover has presented a group audit conducted after Hoover's discharge indicating similar compliance problems in many originators' files, and affidavits of co-workers who state that the compliance problems are commonplace. Hoover has produced evidence sufficient to show that Norwest's articulated reason for her discharge may not be the real reason, and this evidence is sufficient to survive summary judgment on her discriminatory discharge claim.

## II

■ To support her claim for failure to make reasonable accommodation under the MHRA, Hoover must show that she is a qualified disabled person, that her disability is known to the employer, and that the employer failed to make reasonable accommodation. Minn.Stat. § 363.03, subd. 1(6) (1998); *Karst v. F.C. Hayer Co., Inc.,* 429 N.W.2d 318, 321 (Minn.App.1988), *rev'd on other grounds,* 447 N.W.2d 180 (Minn. 1989). Because Hoover has presented a genuine issue of material fact that she has a disability, we focus on the second two prongs.

■ Hoover asserts that Norwest is liable for failure to reasonably accommo-

date because it did not engage in an interactive process with her. The EEOC and federal courts have interpreted the Americans with Disabilities Act (ADA) to require an employer to enter into an interactive process with the employee to determine what would be a reasonable accommodation. *See Fjellestad v. Pizza `Hut of Amer., Inc.,* 188 F.3d 944, 951–52 (8th Cir.1999) (discussing circuit courts of appeals' treatment of duty to engage in interactive process); 29 C.F.R. § 1630.2(*o*)(3) (1998); 29 C.F.R. App. § 1630.9 (1998). But this duty is triggered only when an employee requests a reasonable accommodation under the act. 29 C.F.R. App. § 1630.9. The employer must know of both the disability and the employee's desire for accommodations for that disability. *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 312–13 (3d Cir.1999); *see also Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155, 164 (5th Cir.1996) ("the ADA does not require an employer to assume that an employee with a disability suffers from a limitation"). Thus, a threshold issue is whether Hoover ever requested an accommodation.

The record demonstrates that Norwest was aware of Hoover's disability, fibromyalgia, but it does not adequately demonstrate that she requested an accommodation for that disability. During her deposition, Hoover was unable to identify a time, even when pressed, that she had asked for accommodation *because of* her disability. Hoover's supervisor stated that Hoover never connected her general requests for additional processing support to her fibromyalgia. Although Hoover's deposition responses refer generally to requests for additional processing support, these requests appear to relate primarily to the general problems arising from the lack of available processors rather than specifically to Hoover's impairment. Neither Hoover nor her doctor indicated a need for

workplace accommodations at the time of the diagnosis.

In response to summary judgment, Hoover submitted an affidavit attempting to connect the requests to her fibromyalgia. But in light of her earlier failure during discovery to produce any specific evidence of requests for an accommodation, Hoover's affidavit assertions are more contradictory than explanatory and constitute the type of statements that are discounted as substantive proof. *See Wallin v. Rappaport*, 543 N.W.2d 91, 91 (Minn.1996) (inability to definitively recall facts to support elements of claim results in no direct evidence that would avoid summary judgment) (order op.); *see also Banbury v. Omnitrition Int'l, Inc.*, 533 N.W.2d 876, 881 (Minn.App.1995) ("self-serving affidavit that contradicts earlier damaging deposition testimony is not sufficient to create a genuine issue of material fact") (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365 (8th Cir.1983)). Because Hoover failed to establish that her employer knew she sought accommodation for her disability, the district court did not err in granting summary judgment on this claim.

**III**

■ To establish a prima facie case of reprisal under the MHRA, Hoover must show statutorily protected conduct, adverse employment action, and a causal connection between her conduct and Norwest's action. *Dietrich v. Canadian Pac. Ltd.*, 536 N.W.2d 319, 327 (Minn.1995); *see also Cross v. Cleaver*, 142 F.3d 1059, 1071 (8th Cir.1998) (interpreting similar provision of federal discrimination law).

■ Requesting a reasonable accommodation is statutorily protected conduct. Minn.Stat. § 363.03, subd. 1(6). Hoover asserts that she was discharged within 48 hours of threatening to take her complaints about the lack of processor sup-

port to human resources. In her deposition Hoover stated that the specific protected activity was requesting a reasonable accommodation. But as previously discussed, Hoover has not asserted facts sufficient to show that she requested an accommodation because of her disability. The ambiguous statements in the deposition, together with the subsequent affidavit, are insufficient to show statutorily protected activity. Summary judgment is appropriate on Hoover's reprisal claim. *See Dietrich*, 536 N.W.2d at 327 (affirming summary judgment when no specific accusation of age discrimination before discharge); *Carter v. Peace Officers Standards & Training Bd.*, 558 N.W.2d 267, 273 (Minn.App. 1997) (affirming summary judgment when alleged discriminatory act was in response to expressed "concerns" rather than a practice forbidden by MHRA).

**IV**

■ Norwest asserts that Hoover's negligent-supervision claim is preempted by the exclusivity provision of the MHRA. *See* Minn.Stat. § 363.11 (1998) (providing that as to acts declared unfair by the MHRA, the procedure provided in chapter 363, while pending, is exclusive). The Minnesota Supreme Court has interpreted the exclusivity provision to be a bar to causes of action "relating to the same allegedly discriminatory practice and predicated on identical factual statements and alleging the same injury or damages." *Williams v. St. Paul Ramsey Med. Ctr., Inc.*, 551 N.W.2d 483, 485 (Minn.1996).

This court has found common law claims of negligent supervision preempted by the MHRA in some circumstances. *See, e.g., Sullivan v. Spot Weld, Inc.*, 560 N.W.2d 712, 717 (Minn.App.1997), *review denied* (Minn. Apr. 24, 1997). The critical issue in these cases is whether the duty forming the basis of the negligent-supervision claim exists apart from the MHRA. *See id.*, 560 N.W.2d at 717.

Hoover cites as an independent common law duty the employer's duty to provide a reasonably safe workplace by providing her with processor support to accommodate her disability. *See Berg v. Johnson,* 252 Minn. 397, 401, 90 N.W.2d 918, 921 (1958) (describing employer's duty to warn employees of dangers of job). The duty Hoover describes is not a duty to prevent known hazards or dangers, but a duty to accommodate a disability. This duty did not exist at common law, but was created by the MHRA. Hoover's negligent-supervision claim is therefore preempted by the exclusivity provisions of the MHRA.

## V

Hoover has sued three different Norwest entities under a single-employer theory. The district court found that all three were proper defendants. Only Norwest Corporation challenges the district court's finding. Entities are liable as a "single employer" if they have (1) interrelated operations, (2) common management, (3) centralized labor-relations control, and (4) common financial ownership or control. *Johns v. Harborage I, Ltd.,* 585 N.W.2d 853, 858 (Minn.App. 1998); *Fahey v. Avnet, Inc.,* 525 N.W.2d 568, 572 (Minn.App.1994). The party alleging single employment, in this case Hoover, must show "highly integrated" ownership and operation. *Johns,* 585 N.W.2d at 858 (citation omitted).

On this record, there is insufficient evidence that Norwest Corporation was a proper defendant under a single-employer theory. The first prong of the *Fahey/Johns* test is met by virtue of Norwest Corporation and Norwest Funding's parent-subsidiary relationship. Hoover has also provided evidence of uniform employment policies that suggest common management. But Hoover has pointed to no evidence indicating centralized labor-relations control or common financial con-

trol. The factor of centralized labor-relations control is considered key. *Fahey,* 525 N.W.2d at 572. Thus, we reverse the determination that Norwest Corporation is a proper defendant.

## DECISION

We affirm summary judgment on Hoover's claims of failure to make reasonable accommodation, reprisal, and negligent supervision. But we conclude that Hoover's evidence of discriminatory discharge was sufficient to withstand summary judgment, and we reverse and remand on that claim. Because the evidence is insufficient to show that Norwest Corporation was Hoover's employer, we reverse the district court's finding that Norwest Corporation was a proper defendant and dismiss the claims against Norwest Corporation.

**Affirmed in part, reversed in part, and remanded.**