Thomas J. POTTER, Appellant,

v.

ERNST & YOUNG, LLP, Respondent.

No. CX–00–1435.

Court of Appeals of Minnesota.

Feb. 6, 2001.

Michael B. Chase, Saint Paul, MN, (for appellant Thomas J. Potter).

Shirley Lerner, Minneapolis, MN; J. Andrew Heaton, Ernst & Young LLP, Washington, DC, (for respondent Ernst & Young, LLP).

Considered and decided by HANSON, Presiding Judge, SHUMAKER, Judge, and, FOLEY, Judge.*

## OPINION

HANSON, Judge

Appellant Thomas Potter challenges the district court's grant of summary judgment in favor of respondent Ernst & Young on his reprisal claim. Although the district court also granted summary judgment against appellant on his claims of race and disability discrimination, appellant does not challenge the summary judgment on those claims. Appellant argues that the district court erred in concluding that he did not show a causal connection between his discrimination complaint and his termination. We reverse.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## FACTS

The following description of the facts views the evidence in the light most favorable to appellant.

In 1989, appellant, who is Native American and dyslexic, began working for respondent's management consulting group. Appellant had Bachelor of Electrical Engineering and Computer Science degrees from the University of Minnesota and ten years of work experience. While employed by respondent, appellant developed significant expertise in computers, telecommunications and networking. In October 1994, he was promoted to senior manager. Until late 1996, he continued to have a high "utilization" rate (the percentage of time a professional works for paying clients). His aspiration was to become a partner.

Appellant contends that in late 1996, when Bruce Shoger was assigned to be his counselor, his opportunities at respondent decreased. The role of a counselor at respondent is to advocate for and advance their counselees' careers. Rather than giving appellant career advice and guidance, Shoger had little contact with appellant, seldom advocated for appellant's placement on engagements and, in fact, recommended against his placement on one major engagement. In February 1997, appellant requested a new counselor but that request was denied.

On July 31, 1997, appellant received his annual performance evaluation, indicating that his overall performance "fully meets" respondent's expectations, as did his Service Rating for utilization.

On October 27, 1997, appellant complained to Toni Cornelius, the head of respondent's Chicago-area human resources department, that his career was not advancing. He expressed his belief that this was due to discrimination based on his dyslexia and the fact that he was Native

Minn. Const. art. VI, § 10.

American. Appellant first suggested his complaints be addressed informally, but, when told that the issue was too important not to make it official, he agreed to make it a formal complaint.

Respondent's policies require that discrimination complaints receive appropriate investigation and remedial action. Yet the human resources department did not investigate appellant's discrimination complaint, and neither human resources nor his counselor communicated further with appellant about it. In mid-January 1998, appellant had to contact Cornelius again to inquire about the status of his complaint.

Meanwhile, respondent had decided to cut 200 employees nationally, and approximately 20 from the Chicago region, which included Minneapolis. On January 15, 1998, Scott Henkel, the head partner of the Minneapolis office, added appellant to the list of those to be terminated, on the grounds that his utilization was low and his skills did not match the needs of the firm. However, the human resources department advised Henkel that appellant's personnel files did not support the decision to terminate him. Particularly, Cornelius was concerned that the "paper trail" did not support respondent's claim that appellant's skills were not consistent with the needs of the firm. A meeting was held among Henkel, Shoger, the head of the Chicago area consulting group, and Cornelius to consider taking appellant's name off of the termination list. Shoger objected and made negative comments about appellant's "attitude and presentation."

One day later, Henkel became aware that a new evaluation for a recent engagement described appellant's performance as "excellent." Henkel e-mailed Shoger that appellant's recent "review does not in the least" support appellant's termination. Henkel instructed Shoger that, in light of the plan to terminate appellant, Henkel would like to see all of appellant's reviews before they were given to appellant. The decision to terminate appellant was finalized on January 29.

On February 20, 1998, appellant received a letter of termination, informing him that he was terminated because his utilization was low and his skills no longer matched those needed by respondent. Of the three people terminated from the management consulting group in the Minneapolis office, two were racial minorities.

Appellant filed this action against respondent, alleging discrimination based on disability and race, and reprisal. Respondent moved for summary judgment, which the district court granted in respondent's favor on all three claims. Appellant challenges only the summary judgment on his reprisal claim.

## ISSUE

Was appellant's evidence of reprisal sufficient to avoid summary judgment?

## ANALYSIS

■ On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact, and (2) whether the lower courts erred in their application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990).

> A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law. * * * On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted.

*Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citations omitted).

■ Appellant claims the district court erred when it granted summary judgment in favor of respondent on appellant's reprisal claim. The Minnesota Human Rights Act (MHRA) prohibits intentional reprisal against an employee who has engaged in

statutorily protected activity. Minn.Stat. § 363.03, subd. 7 (2000). To determine whether a violation of the MHRA has occurred, we use the three-part test established by the United States Supreme Court in *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 444 (Minn.1983).

 The employee-plaintiff has the initial burden of establishing a prima facie case of discrimination. *McDonnell–Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824. Once the employee has established a prima facie case of reprisal, the burden shifts to the employer to articulate a legitimate and non-discriminatory reason for the adverse employment action. *Id.* The burden then shifts back to the employee to show that the proffered reasons were not the true reason for the action, but were instead a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825.

**A. Did appellant's evidence show that there are genuine issues of material facts concerning a prima facie case of reprisal?**

 On a claim of reprisal, a prima facie case may be established by showing: "(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two." *Hubbard*, 330 N.W.2d at 444 (citation omitted).

**1. Statutorily protected conduct**

 The MHRA prohibits intentional reprisal against an employee who has engaged in statutorily protected activity, including filing a discrimination complaint. Minn.Stat. § 363.03, subd. 7 (2000). Respondent challenges the district court's conclusion that appellant participated in statutorily protected conduct, arguing that appellant did not make a formal complaint of race or disability discrimination. However, appellant's testimony is that when Cornelius suggested that his concerns were too serious to treat informally, he agreed that his concerns should be treated as a formal complaint. This evidence raises genuine issues of material facts as to statutorily protected conduct. Moreover, respondent failed to file a separate notice of review challenging this conclusion.

**2. Adverse action**

To establish a prima facie case of reprisal, appellant must also establish that there was an adverse action by respondent. *Hubbard*, 330 N.W.2d at 444. Respondent does not dispute the district court's determination that appellant suffered an adverse employment action.

**3. Causal connection**

 Finally, appellant must establish that there is a causal connection between his discrimination complaint and the termination of his employment. *Id.* The district court concluded as a matter of law that appellant was unable to show this causal connection. We disagree.

 We are mindful that discriminatory intent or retaliatory motive are difficult to prove by direct evidence. Thus, an employee may demonstrate a causal connection "by evidence of circumstances that justify an inference of retaliatory motive." *Dietrich v. Canadian Pac. Ltd.*, 536 N.W.2d 319, 327 (Minn.1995) (quotation omitted). In this case, appellant set forth sufficient facts from which such an inference may be drawn.

First, the close proximity between appellant's discrimination complaint and the termination decision supports the inference of reprisal. *See Thompson v. Campbell*, 845 F.Supp. 665, 675 (D.Minn.1994) (explaining that the plaintiff's termination four months after filing her complaint, together with other circumstantial evidence in the record, raised an issue of material fact concerning the causal connection between her protected conduct and her termination); *Dietrich*, 536 N.W.2d at 327 (stating that a causal connection may be

established by the proximity in time between the statutorily protected act and the adverse action). Here, the decision to terminate was made within less than three months after appellant's complaint.

Second, while respondent has a well-established policy of investigating complaints, the human resources department failed to follow the proper procedures for investigating appellant's complaint of discrimination. This lack of investigation by respondent tacitly supports an inference of discrimination. *See Gillson v. State Dep't of Natural Res.*, 492 N.W.2d 835, 840 (Minn.App. 1992) (stating that "failure to investigate gives tacit support to the discrimination because the absence of sanctions encourages abusive behavior") (quotation omitted), *review denied* (Minn. Jan. 28, 1993). Such lack of investigation supports the inference that respondent decided to terminate appellant to avoid investigating his complaint. Further, this failure to investigate narrows the proximity between the complaint and the termination because the complaint was still pending, and appellant renewed it, at the precise time the decision to terminate was made.

In addition, the evidence shows that the very person about whom appellant complained was instrumental in the decision to terminate appellant. Further, appellant provided anecdotal evidence of negative conduct by respondent with respect to appellant's Native American status and his dyslexia.

This evidence, taken together, creates an inference that appellant's termination was sufficiently related to his discrimination complaint to raise genuine issues of material facts concerning the causal connection required to prove reprisal.

**B. Did appellant provide sufficient evidence that respondent's stated reason for firing him was pretextual?**

The district court did not reach the issue of pretext. However, because respondent argues that summary judgment was also warranted because there are no genuine issues of material facts regarding pretext, we will address this issue. Respondent argues that Ernst & Young was trying to improve the quality of its workforce nationwide and appellant was selected for termination because (1) his utilization was low and (2) his skills no longer matched the needs of the practice. We conclude that respondent articulated a legitimate non-discriminatory reason for firing appellant.

Appellant must then present evidence that respondent's non-discriminatory reason was pretextual, either by direct evidence that a discriminatory reason likely motivated respondent or indirect evidence "that [respondent's] proffered explanation is unworthy of credence." *Sigurdson v. Isanti County,* 386 N.W.2d 715, 720 (Minn.1986) (quotation omitted); *Hoover v. Norwest Private Mortgage Banking,* 605 N.W.2d 757, 762 (Minn.App.2000), *review granted* (Minn. April 25, 2000). In *Hoover,* the employer argued that a plaintiff must not only prove that the articulated reason is unworthy of belief, but also must provide evidence raising an inference of intentional discrimination. *Id.* at 765–6. We would observe that proof of pretext itself supports such an inference—why else would an employer give a false reason for termination? In any event, appellant's evidence of intentional discrimination, discussed above, is sufficient even if there was this additional requirement. *Cf. Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2108, 147 L.Ed.2d 105 (2000).

We believe appellant's evidence is sufficient to present genuine issues of material fact regarding pretext. Respondent's utilization rates are not completely objective measurements. In fact, an employee's utilization is largely within the control of his or her superiors. Thus, the failure of appellant's counselor to advocate for his placement on projects, which was at the

very heart of his discrimination complaint, necessarily reduced appellant's utilization rate. Similarly, the significant increase in appellant's billing rate in mid 1997, from $380 per hour to $470 per hour, admittedly had an adverse impact on his utilization. Also, the assignment of appellant to non-billable work, though otherwise important to the firm, reduced his utilization rate.

Further, while respondent claims that appellant was chosen for termination because of his low utilization, employees with similar or lower utilization rates were not fired. Respondent explains that those employees were not terminated because they were assigned to non-billable work, but appellant was likewise assigned to non-billable work.

Appellant also challenges the accuracy of respondent's calculation of his utilization rate because it did not reflect credit for non-billable work he was assigned by the firm to do on the Year 2000 Project or for the time he spent on a billable project that ultimately was not billed because of mistakes made by the partner on the engagement. According to appellant, credit for these projects would increase his utilization to a rate well in excess of the goal set for senior managers.

Finally, respondent's human resources department did not believe there was a "paper trail" to support the articulated reasons for appellant's termination. Specifically, it advised Henkel that appellant's personnel file did not support respondent's claim that appellant's skills no longer matched those of the firm. Moreover, the personnel files did not reflect that appellant was specifically warned that his utilization rate might jeopardize his employment.

This evidence is sufficient to raise genuine issues of material fact regarding pretext.

**C. Did appellant provide sufficient evidence of damages?**

■ The district court did not reach the issue of damages. However, because respondent argues that summary judgment in its favor was also warranted for lack of any genuine issues of material facts regarding damages, we will address this issue.

Respondent argues that there was no evidence of damages because (1) appellant obtained new employment at higher pay and (2) appellant's attempt to establish lost wages by comparing his current income to that of a partner at Ernst & Young is too conjectural to withstand summary judgment. The question whether appellant can provide adequate proof of lost wages is one we will leave for the district court to address at trial. For summary judgment purposes, it is enough that appellant has presented sufficient evidence of emotional distress damages. *See Cooper v. Mower County Soc. Servs.*, 434 N.W.2d 494, 500 (Minn.App.1989).

## DECISION

Because there are genuine issues of material facts regarding (1) the causal connection between appellant's discrimination complaint and his ultimate termination, (2) whether respondent's non-discriminatory reason for termination was pretextual and (3) whether appellant suffered damages, we reverse.

**Reversed.**